JOHN R. WALLACE *et al.*, plaintiffs in error, *vs.* THE TRUSTEES OF THE ATLANTA MEDICAL COLLEGE, defendants in error.

1. Where a levying officer makes a levy upon a portion of an entire lot, it is his duty so to divide the lot as not wantonly and grossly to destroy the nature of the property.

2. When an execution against the Atlanta Medical College for less than .$200 00 was levied upon a portion of the lot upon which the college building is erected, and the portion levied on, as described in the entry on the *fi. fa.*, and as advertised and sold, was of such a character as that the line divid'ng the parts levied on from the parts not levied on, ran through the body of the building, having seven-tenths of the building on the part sold, and three-tenths on the part not sold :

*Held*, that such a levy and such a sale was illegal and void as a wanton and gross injury to the defendant's property, whether intended or not, and that on paying to the purchaser the money paid by him at the sale, and which had been appropriated for the defendant's benefit, the college was entitled to have the sale rescinded.

Judicial sale. Levy. Description. Sheriff. Before Judge HOPKINS. Fulton Superior Court. October Term, 1873.

Nathaniel J. Hammond recovered a judgment against the trustees of the Atlanta Medical College for $100 00 principal, besides interest and cost. The execution based on this judgment, was levied upon a portion of the lot on which .the Atlanta Medical College now stands. In the advertisement of said levy it was described as "a part of land lot number

Wallace *et al.* *vs.* The Trustees of the Atlanta Medical College.

fifty-two, in the fourteenth district of originally Henry, now Fulton county, Georgia, to-wit: that part of the Medical College lot described as follows, beginning at the corner of Butler and Jenkins streets, in the city of Atlanta, running along Jenkins streets one hundred feet, thence back at right angles with Jenkins street to number two hundred and thirty-five, (?) thence at right angles one hundred feet to Butler street, thence along Butler street to the beginning corner, containing a half acre, more or less."

The property levied on was sold as described in the advertisement, and purchased by John R. Wallace and Joseph A. Alexander, for the sum of $160 00. The money was paid and appropriated as follows: $103 50 to plaintiff in execution; $17 20 to costs; balance in hands of sheriff subject to the order of the defendants in execution. The purchasers received a sheriff's deed.

At the time of the sale, neither the sheriff nor the purchasers were aware of the fact that the advertisement embraced a portion of the Medical College. This building fronts sixty-six feet on Butler street, and ninety-six and a half feet on Jenkins street. The advertisement covered the entire building, except eleven and a half feet on Jenkins street. The purchasers therefore obtained a deed to all of said building except eleven and a half feet. There was vacant property around the same which would have proved more than sufficient to have satisfied said execution. The Medical College building was worth $20,000 00.

The trustees of the Atlanta Medical College filed their bill, based upon the facts aforesaid, against Wallace and Alexander, tendering the purchase money, with interest, and praying that the defendants might be perpetually enjoined from taking possession of the property claimed to have been purchased, and that the deed executed by the sheriff should be decreed canceled.

The defendants answered, denying any notice of irregularities or defects in the levy, advertisement or sale, and standing upon their rights as *bona fide* purchasers.

There were other issues made by the pleadings and evidence, but in view of the verdict and the decision, they need not be here mentioned. The facts, so far as materially developed by the testimony, were as above stated.

The jury returned the following verdict: "We, the jury, find, in view of there being a mistake in the property sold by imperfect description, and in view of the inadequate price paid for the same, by imperfect description, we find the deed null and void and of no effect, and perpetually enjoin the defendants from possession of property."

The defendants moved for a new trial, because the verdict was contrary to the law and the evidence. The motion was overruled, and defendants excepted.

L. E. BLECKLEY; B. F. ABBOTT, for plaintiffs in error.

ROBERT BAUGH; WILLIAM EZZARD; T. P. WESTMORELAND, for defendants.

McCAY, Judge.

1. Did this case stand only on the reasons given by the jury in their verdict for their finding, we would hesitate long before we could sustain it. The inadequacy of price is indeed great, but if this is to be a ground for setting aside a sale where the absence of fraud is apparent, we should have few public sales that could stand—a result contrary to public policy and as injurious to defendants as to any other class. The description, it is true, might have been more complete. An auctioneer, anxious to parade his wares before the public, would doubtless have called attention plainly and emphatically to the fact that the college building, or a large part of it, was included; and we think it is the duty of the officer to call the attention of buyers in his advertisement to any circumstance that, upon the face of it, would increase the probability of a good price. But a failure of the officer in advertizing property does not vitiate a sale, unless the purchaser can be charged with knowledge and complicity: Code, 2688. *He* is only con-

Wallace *et al. vs.* The Trustees of the Atlanta Medical College.

cerned to know that the officer has power—authority—to sell, and that he is proceeding according to the prescribed forms. But whilst we think the reasons given by the jury for their verdict unsatisfactory, yet, from the plain and evident facts in the record, we think the verdict right. This 'levy is, in our judgment, void, and as the authority of the officer to sell depends upon the legality of his levy, we think the sale void. The levy is not uncertain. It is terribly certain. It surely and inevitably, as the proof clearly shows, cuts the body of the college in two. Under the clear and definite lines it points out, the levying officer has devoted to sale such a part of the lot as throws seven-tenths of this valuable building upon the part sold, leaving three-tenths upon the part unsold. In our judgment an officer may not proceed recklessly with his process, and make, at his pleasure, any seizure his fancy may dictate. He has duties, as a sworn officer of the law, to the defendant as well as to the plaintiff in execution. His authority is to seize the property of the defendant, *or so much thereof* as will satisfy the plaintiff's claim. In favor of innocent purchasers his acts will be presumed fair. But it is always his duty to be fair, to use his office so as not to wantonly and recklessly hurt even him whom the law treats as in default. There is but one common law case I have been able to find bearing on this direct question. A sheriff, under an *elegit*, put the plaintiff in possession of a *moiety* (which was the direction of the writ) of a tenement, and the court held this void. He should have selected the rooms and put the plaintiff in possession of a moiety of them: Dalton on Sheriffs, 216; Dean *vs.* Lord Abdingdon, 2 Douglass, 473.

2. In the case at bar the officer has undertaken to divide a lot, and he has so done it as to separate a valuable house upon it into two parts, by an imaginary line drawn through it, at a point where three-tenths will be one side and seven-tenths on the other. It appears, too, that this house is notoriously a college, and there is nothing to show that there is any wall at this part. To put the purchaser in possession, he will, in all probability, have to deliver him a portion of a room, and

it is inevitable that such a sale has taken place as no man in his senses would make, and no man buy at a fair price. The lines pointed out in the levy are rigid; they are fixed by the legal length of a foot, and by the legal line of the street. If they are certain, they are also unyielding, and if the purchaser has bought anything he has bought exactly what the calls of the description will give. We think such a levy and sale is oppressive and illegal, a wanton, useless and outrageous injury to the defendant, for no possible good to anybody. It stands exactly in the situation of the contract of the merchant to give a pound of his flesh on his failure to pay. The only excuse for it is that the officer made a mistake. Had he done deliberately what is the inevitable effect of his entry, his conduct would have been outrageously oppressive. The purchasers were bound to know the effect of the description; they were bound to know that they were buying seven-tenths of a house; that they would get a building with one end out. Had this levy been in terms so as to say the truth, that it was upon seven-tenths of the house, nobody would have bought. The defendant is left with three-tenths of his house. It has been suggested that there might be a partition, that either party might procure a sale of the whole and divide the proceeds; but there is no joint interest. If the purchaser gets anything he gets what his meets and bounds call for. We can conceive of no greater outrage in the way of a levy, and we are of opinion no officer had a right to make such an one, and that it is void. As we have said, it can only be even excused on the ground that it was a mistake. We feel sure neither the plaintiff nor the bailiff would have dreamed of such an outrage, and we feel equally sure that we have but few men in the community who would have bought under such a levy, had they known it. Not only because the plainest common sense would teach that it was oppressive, but because they would be unwilling to lend themselves to aid in such oppression. It is in proof that the purchasers did not know that such a wrong was being done. They bought on the spur of the moment, thinking only to get part of the lot, but never

dreaming that they were cutting the house in twain.    We do not think they were to blame.    They got nothing, because the levy was void, and the officer had no authority to sell.    They paid their money in good faith, and it has gone to the use of the college, and the sale should be rescinded only on condition that this money be repaid with interest.

Judgment affirmed.