Parker, administrator, *vs.* Glenn, *et al.*

---

PARKER, administrator, *vs.* GLENN *et al.*

1. While it is the duty of the plaintiff in error to specify the errors complained of, this has been substantially done in the present case by setting out and assigning error on the charges given and refused.

2. Inadequacy of price is not sufficient *per se* to set aside a sale, unless it is so gross as, when combined with other circumstances, to amount to fraud; but if it be great, it is of itself a strong circumstance to evidence fraud; and this is true where it is attended by any other fact showing the transaction to be unfair or unjust, or against good conscience.

(*a.*) While irregularities in bringing on and conducting a sale will

not alone affect the rights of an innocent purchaser, who is bound only to see that the sheriff has competent authority to sell, and that he is apparently proceeding to sell under the prescribed forms, the rule is different where the estate against which the execution was proceeding was greatly damaged by the misconduct of the sheriff and others, and the purchaser was not an innocent purchaser, but had notice of the facts, or reasonable grounds to cause him to inquire concerning them.

3. Courts have full power over their officers and their acts in making execution sales, so far as to correct wrongs and abuses, errors, irregularities, mistakes, omissions and frauds; and whenever they are satisfied that a sale made under process is infected with fraud, irregularity, or error, to the injury of either party, or that the officer selling is guilty of any wrong, irregularity or breach of duty, to the injury of the parties in interest, or either or any of them, the sale will be set aside; and so also where there has been a wilful disregard of the law as to the manner of selling.

4. A sheriff cannot raise by sale under execution a greater amount of money than by the writ he is commanded to make, with costs, and if the land sold be susceptible of subdivision so as to sell a less quantity, and raise only the amount of money required, the sale of the whole will be set aside, unless the separation and sale would have tended to impair the value of the different parts when so separated.

(a.) The subdivision for the purpose of sale must be discreetly made with a view to the interests of all concerned. Therefore, where an officer sold the central portion of a tract of land to his own son-in-law, and it was so taken out of the tract as to greatly impair the value of the residue, and to cut off direct communication between the remaining parcels, it was an abuse of the process of the court, especially where the land sold much below its true value; and the court will set aside such a sale, both for the improper conduct of the officer, and for inadequacy of price.

5. The charge requested should have been given, and that given was error.

(a.) An illustration, given by way of example in connection with a correct principle of law, is not error, unless it has a tendency to mislead the jury.

April 8, 1881.

Executions. Levy and Sale. Practice in Supreme Court. Title. Fraud. Notice. Before Judge FAIN. Catoosa Superior Court. August Term, 1883.

Reported in the decision.

W. K. Moore ; R. J. McCamy, for plaintiff in error.

McCutchen & Shumate ; W. H. Payne, for defendants.

Hall, Justice.

The complainant, as administrator of Allen Chastain, deceased, instituted his suit on the equity side of the superior court of Catoosa county, against W. T. Blackford, J. S. Glenn *et al.*, in which he alleged as follows :

That his intestate, in his lifetime, was the owner of certain real estate in Catoosa county of great value, and that he conveyed said lands by deed to one W. T. Blackford, for a farm which Blackford was in possession of in Tennessee; that Blackford gave him a mortgage on the farm he traded to Blackford in Catoosa county, to indemnify him from loss by reason of an alleged lien on the Tennessee lands, which Blackford assured Chastain was of no validity; that a bill was then pending in the chancery court of James county, Tennessee, to set up said lien; that said suit was ended by final decree setting up the lien for an amount as great as the value of the land ; that Blackford was guilty of fraud, etc.; that he was insolvent and unable to respond in damages; that complainant's intestate had filed a bill in the superior court of Catoosa county, alleging said facts against said Blackford, and that it had proceeded to a final decree setting aside said trade made with Blackford, and revesting in complainant's estate the land in Catoosa county as fully as if no trade had been made with Blackford. Complainant further alleged that in March, 1881, his intestate died, and that at his death there was a small judgment against him in the justice's court of ——— district, Catoosa county, for a total of principal, interest and costs, less than forty dollars ; that the family of said Chastain lived in Tennessee, and knew nothing of said debt, which was levied after the death of said Chastain, on the farm aforesaid in Catoosa county, worth $2,000.-00, and that it was advertised for sale in May, 1881, but the

sale was postponed; that it was again advertised for sale in June, and again postponed, and re-advertised for sale in July, 1881, when one of the lots, worth fifteen hundred dollars, was sold for $50.50 to one J. S. Glenn; to attack this sale the present bill was filed, and as cause why it should be set aside, it was alleged, that while the first action against Blackford was pending, he fraudulently procured the levy of this small *fi. fa.*, so that he may get the property sold so as to avail himself of a defence in the pending suit; that the levy was excessive, and that the ·parcel sold was the most valuable of the tract, it consisting of three tracts, lying in the same range of lots, either of which would more than have paid off the judgment, and that the sheriff selected the middle lot, thus leaving the remaining two tracts separated from each other by half a mile; that there were parties going to bid at the sale, and would have gone, and would have made the land bring something like its value, but that said Blackford and his attorney and the sheriff told such bidders that Blackford was going to claim the land, and there would be no sale; that Blackford had a claim prepared in *forma pauperis*, and swore to it, and on the way to the court-house, the sheriff and Blackford's attorney stopped in at the house of a person who was going to the sale, and would have bid, if he had gone, an amount much larger than it was sold for; that the sheriff or the attorney asked said · person what was the lot on which the improvements were, and was told by him; when he asked if the land was going to be sold, and they replied that Blackford was going to claim all that he had bought from Chastain; that this conversation was heard by another, and that both he and the party from whom they sought the information were thus kept away from the sale; that the said Glenn went to the sale, knowing what had been done, and collusively bought the property as aforesaid; that Blackford bid against Glenn a few times to deceive the small crowd present, numbering not more than six to one dozen. Blackford owed Chastain more than

enough to pay off the *fi. fa.* and prevent the sale. Complainant had offered to pay Glenn his money and interest, and more, if he would re-convey the land to Chastain's estate. Complainant waived discovery and prayed for relief, making Blackford, Glenn and Mrs. Smith, who had bought with notice, parties defendant.

The complainant's testimony substantiated most of the material statements and charges of his bill, and was only partially overcome by that offered by the defendants, who denied all personal participation in the fraud charged as to keeping away bidders, and all notice that it was done by others.

At the close of the evidence, complainant requested the court to charge as follows: "Inadequacy of price alone is not sufficient cause for setting aside a sale which is in other repects unexceptionable, but when the inadequacy of price is very great, such as to shock the moral sense, and is connected with other circumstances, either of frand or irregularity, and particularly when surrounded by indications of hardships or unfairness, the sale will be set aside. So, when the inadequacy of consideration is great and the notice of sale given by the officers is vague, or from any act of his, bidders are kept away from the place of sale, who would have bid for the land if there, an unconscionable advantage was obtained by the purchaser, who bid off the land at a grossly-inadequate price, a court of equity will interfere and set aside the sale so made. Equity will not allow a person so purchasing to take advantage of a sale so made. The jury will see that something more than mere inadequacy of price must appear, such as a want of due advertisement, or some unusual circumstances, to keep bidders away, and thus produce the result. There are cases where sales will be set aside where no fraud or other wrong-doing of the purchaser is charged or proved; such as where, by storm or flood, or other unusual circumstances, persons have been kept away from the sale; who would otherwise have been present. These are simply

v 72-42

cited by the court as instances, and by way of illustration, the rule being that any unusual circumstance which operates greatly to the injury of the party complaining, and which would give the purchaser an unconscionable advantage, would be sufficient to set aside a sale." This request of complainant the court declined to give, and complainant excepted.

Instead of this written request to charge, the court gave the following, to all of which complainant excepted: ·

"Something more than mere inadequacy of consideration must appear, something that would keep away bidders, which was known to the purchaser, and of which he took advantage, and knowing that he was thus obtaining an unconscionable advantage. There are cases where sales will be set aside where no actual fraud or other wrongdoing of the purchaser is charged or proved; for example, when by storm or flood, or other unusual known circumstances to the purchaser, whereby the people have been kept away from the sale, who would otherwise have been present and bid."

"If the sheriff or other person, by any remark or course of conduct, kept a bidder or bidders away from the sale, and Glenn did nothing and said nothing to keep away bidders, and did not know that the sheriff or other person had done or said something to keep away bidders, that would not affect Glenn's title. If he did nothing, said nothing and did not know that other persons had done or said something to keep away bidders, he would, nevertheless, get a good title, so far as this matter is concerned."

"If Glenn did nothing and said nothing to keep away bidders, or to depress bidding, or to cause the land to bring less than it otherwise would have done, and had no notice that any other person had done or said such things, and if the sale was apparently regular, and there was nothing apparent to show Glenn that persons had been kept away, then he got a good title, notwithstanding the price was inadequate. Inadequacy of consideration, however great,

alone, will not be sufficient to set aside a sale, nor can inadequacy of price be coupled with the acts or sayings or conduct of others, in which Glenn in no way participated, and of which he had no knowledge or notice by information, or the circumstances surrounding the sale, to affect his title, provided the sale was apparently fair."

" The sheriff had the right, in the execution of his honest judgment, to sell any of the lots or parts of lots levied on, which, in his judgment, would make the money. If the part sold, being a separate lot, would so cut up and divide the remaining portion that it would be less valuable, Glenn would not be affected by that fact, unless he directly or indirectly influenced the sheriff to sell the particular parcel sold. If anybody is damaged by the sale of a particular portion of the property, instead of some other part thereof, it is a question between such injured party and the sheriff. In this case no issue is made as to the fact."

If the request of complainant contained propositions of law applicable to the case as made by the pleadings and proof, and should have been charged to the jury, then it follows that the charge given was erroneous.

1. It is urged here, however, that it is not shown by the bill of exceptions in what the alleged errors consisted, either in the refusal to charge as requested or in the charge as given, and that for this failure to specify the errors, if any portion of the former be incorrect, and if the latter is not erroneous in all its parts, then the complainant, under the rule prescribed by the Code (§4251) and the settled practice of the court, can take nothing by his writ of error; especially is this so, where he has failed to make a motion for a new trial, which has been refused.

It would perhaps have been better had the motion for a new trial been made, and had the errors alleged in the charges complained of been more definitely and minutely specified; but we are not prepared to say, in this instance, that there has not been a substantial compliance with the rule. The separation into the distinct heads that

make up the entire request to charge, might have amount-
ed to nothing more than a submission of abstract princi-
ples, which, however correct in themselves, would not
have been applicable to the entire case as made, and would
have resulted in confusion, which might possibly have
misled the jury. The charge as given was separated into
distinct heads and was somewhat minutely subdivided.
There is a necessary connection between the various parts
of the request and of each of them, and they follow each
other in natural and logical sequence. While the literal
enforcement of the rule, which we recognize, and to which
we adhere as both expedient and wise, might, in a case
situated as this, work great injustice to parties, and while
there might be much doubt as to the propriety of its rigid
application to a case circumstanced as the present, and we
might think it safest to adopt a somewhat more reasona-
ble and indulgent course, yet it is not indispensable to
relax it in the present instance, for in our view there is
not a single proposition in this long request to charge that
is not sound law.

2. Inadequacy of price is not *per se* sufficient to set
aside a sale, unless it is so gross as, when combined with
other circumstances, to amount to fraud (Code, §2647); but
if it be great, it is of itself a strong circumstance to evi-
dence fraud (*Id.*, §§2742, 3179); and this is true, where it
is attended by any other fact, showing the transaction to
be unfair, or unjust or against good conscience. *Id.*, §3190.

This is unquestionably the law in cases of private sales
or contracts. Why, then, should it be otherwise in cases of
sales under execution? Why should not this fact, when
accompanied by circumstances of fraud or irregularity
resulting in great hardship and unfairness to one of the
parties, such as a grossly -excessive levy upon property
otherwise unincumbered, worth, at a fair valuation, thirty
times as much as the amount of the *fi. fa.*, have this effect
upon such a sale, especially where the levy is upon land
which consisted of three distinct though contiguous lots,

lying in the same range, and the centre lot, which is much the most valuable of the three, is brought to sale, thus widely separating the remaining lots, each of which would, if fairly sold, have brought, according to the uncontradicted evidence, much more than enough ·to have satisfied the demand in question, and by this wanton and reckless separation impairing the value of the complainant's property ? Why is not his claim to relief greatly strengthened, when there is evidence going to show that the steps leading to the sale was so ordered as to induce the conclusion that it might not take place, and when persons, who would have otherwise attended and bid, were prevented from doing so in consequence of these appearances?

No sufficient reason occurs to us why a purchase made under circumstances so unusual and so fraught with suspicion should be protected, or why a charge so modest as that requested by the complainant and so pertinent and apposite should have been refused.

While we do not question the soundness of the position that irregularities in bringing on and conducting a sale, will not alone affect the rights of an innocent purchaser who is bound only to see that the sheriff had competent authority to sell, and that he was apparently proceeding to sell under the prescribed forms (Code, §2628), yet we cannot shut our eyes to the fact that the estate which the complainant represents has been greatly damaged by the misconduct of the sheriff and others engaged in this transaction. Nor can we regard as an innocent purchaser, either in a legal or popular sense, by the widest stretch of charity, one who admits that he knew the amount of the demand, the situation and value of the land sold, the effect of the sale upon the price of the remainder of the body, the gross inadequacy of consideration ; who bought on speculation; who a few days thereafter sold that for which he paid $50 for one thousand dollars cash ; who refused the amount of his bid when tendered ; and who admitted his willingness to allow his co-defendant and associate, Black-

ford, who had once purchased these lands from complainant's intestate, and who on account of his unfair dealing had been dispossessed by a decree of the court, to take his bid by paying him $200, though denying at the same time that Blackford had anything to do with his making the purchase, or that he made it with the understanding that he was to have the land by paying him therefor $100. Taking this account of the matter to be true, there was surely enough here to have put any reasonable and fair-minded man upon inquiry, and to have led him to a knowledge of the real state of the facts—in short, to have affected his conscience with notice that he was making an unjust and inequitable, not to say an iniquitous, bargain, and was for a mere pittance stripping the family of the deceased of their valuable inheritance. It would be a lasting reproach to a court of justice if its arm was not long enough and strong enough to reach and to arrest the consummation of such a wrong. Fortunately, the power to vindicate right and to redress wrong like this is not wanting; it is inherent in courts, both of law and equity.

" When the inadequacy of price is such as to amount to a badge of fraud, or, together with other circumstances, is such as to shock the moral sense, and particularly when surrounded by indications of hardship and unfairness, the sale will be set aside." Rorer on Jud. Sales, §§1081, 1087, citations in note. " But although this inadequacy will not alone be sufficient to set a sale aside, unless so gross as to raise a presumption of other cause, yet when inadequacy is combined with accident or appearances of fraud or unfairness, the sale will be set aside." *Id.*, §1095. So likewise will a sale be set aside, where injury results from misapprehension, caused either by the purchaser, or others interested in the sale, or by the person conducting it, and where the property of infants is sacrificed by the neglect, fraud or misapprehension of their guardian, relief will be given by setting aside a sale and ordering a resale. *Id.*, §566.

3. Many cases establish the full power of courts over their officers and their acts, in making execution sales, so far as to correct all wrongs and abuses, errors, irregularities, mistakes, omissions and fraud; and whenever they are satisfied that a sale made under process is infected with fraud, irregularity, or error, to the injury of either party in interest, or that the officer selling is guilty of any wrong, irregularity or breach of duty, to the injury of the parties in interest, or of either or any one of them, the sale will be set aside. *Id.*, §1099. So where there has been a wilful disregard of the law as to the manner of selling, the same results will follow. *Id.*, §1101.

4. A sheriff cannot raise by execution sale a greater amount of money, than by the writ he is commanded to make with costs, and if the land sold was susceptible of subdivision, so as to sell a less quantity and raise only the amount of money required, the sale will be set aside, unless the separation and sale would have tended to impair the value of the different parts when so separated. *Id.*, §1103. Though it is the duty of the officer to sell in parcels, or a less parcel than the whole tract, where a less quantity will subserve the purpose of satisfying the execution, yet the subdivision must be discreetly made, with a view to the interests of all concerned. Therefore, for an officer to sell the central portion of a tract of land to his own son-in-law, and so taken out of the tract as to greatly impair the value of the residue, and so as to cut off direct communication between the remaining parcels, is an abuse · of the process of the court; and such an abuse is the more aggravated if the land be sold for a sum greatly below its true value, and the court will set aside such a sale, both for the improper conduct of the officer and for inadequacy of price. Rorer on Jud. Sales, §1100, citing Hamilton *vs.* Burch, 28 Ind., 233 ; Lashley *vs.* Cassell, 23 *Id.*, 600, both of which are directly in point and fully sustain the text.

In Tiernan *vs.* Wilson and others, 6 John. (Ch.), R., 411, Chancellor Kent held that the sheriff, under an execution,

ought not to sell, at one time, more of the defendant's property than in the exercise of a sound discretion would appear to be sufficient to satisfy the demand, if the part selected for sale could be reasonably and conveniently detached from the rest and sold separately; that where, on an execution for ten dollars and twenty-five cents, the sheriff sold two lots containing together 446 acres, a moiety of which belonged to the defendant, and was worth above 800 dollars, for the sum of thirteen dollars, the sale would be set aside as fraudulent and void; and although there was no actual corruption or intentional fraud on the part of the sheriff, yet being guilty of very gross negligence and abuse of trust, he was decreed to pay costs. In this well considered case, he further held that these circumstances appearing at the sale were sufficient to charge the bidder's agent thereat with knowledge of all the facts that could affect the validity of the same, and to deprive his principal of the benefit of the purchase, although there was no sufficient evidence of any fraudulent combination between him and the sheriff.

In *Wallace et al. vs. The Atlanta Medical College*, 52 *Ga.*, 164, this court, while preserving the right of parties to purchase at execution sales, where they were guilty of no fraud, as did Chancellor Kent in the above cited case, and protecting them in their purchases against mere irregularities, although the sale might be for an inadequate price, yet held the levy and sale void, where the injury to the defendant's property was wanton and great, whether so intended or not, and actually set aside the sale upon terms strictly equitable, such as were tendered in the case at bar. These principles are not in conflict with any of the other decisions of this court cited and relied upon by the indefatigable and able counsel for the defendant in error, except as to the remedy proper to be employed for the recission of the sale.

5. The foregoing discussion vindicates the soundness of the charge requested by complainant in all its parts, and

the result reached is opposed to the charge as given. It was too narrow in its scope, and excluded from its operation the most material features of the case, as made by the pleadings and proof. There is nothing in the objection that the instance given in the charge, as an illustration of the principle insisted upon was not founded upon testimony. It was offered simply as an illustration, and was carefully guarded as to the purpose for which it was adduced; and even if it was erroneous, the court employed it in the charge which he gave the jury. An illustration given by way of example, in connection with a correct principle of law, however faulty, has been held not to be error, unless it had a tendency to mislead the jury. 33 *Ga.*, 207; 11 *Id.*, 226 (11 head-note). We cannot see that in this case it could have had any such effect; indeed, we think it was apt and well calculated to convey the idea that should have been impressed upon the jury.

Judgment reversed.