JAMES W. PATTON

*v.*

HENRY J. SMITH.

*Filed at Springfield March 30, 1885.*

1. PARTIES—*in bill to foreclose.* In a bill to foreclose a mortgage, all persons interested in the premises, who claim under the mortgagor subsequent and subject to the mortgage, are necessary parties; and if they are not brought in, their rights will not be cut off by the decree.

2. JUDICIAL SALE—*when necessary to sell in parcels.* Where a mortgage, and decree of sale on foreclosure, describe a quarter section of land mortgaged, as a single tract, it is not the duty of the master to divide the land into parcels in making a sale. If several distinct tracts are ordered sold, then it is the duty of the master to sell each parcel separately.

3. BILL TO REDEEM—*by whom.* The assignee of notes secured by a second mortgage on land, although he was not made a party to a bill to foreclose the prior mortgage, but whose assignment is merely colorable, can not maintain a bill to redeem from such prior mortgage and sale thereunder.

APPEAL from the Circuit Court of Macoupin county; the Hon. W. R. WELCH, Judge, presiding.

Messrs. PATTON & HAMILTON, for the appellant:

Cheney, the second mortgagee, and who was a party to the Heaton foreclosure suit, should have redeemed within twelve months from the sale. *Dunn* v. *Rogers,* 43 Ill. 260; *Seligman* v. *Laubheimer,* 58 id. 154.

When real estate has been sold under a decree of foreclosure, a judgment creditor of the mortgagor may redeem from the same, and cut off a junior mortgagee made a party to the foreclosure suit, and failing to redeem within twelve months. *Lamb* v. *Richards,* 43 Ill. 312; *Lloyd* v. *Karnes,* 45 id. 62; *Karnes* v. *Lloyd,* 52 id. 113; *McRoberts* v. *Conover,* 71 id. 524.

And if he purchase at the sale after redemption, he is subrogated to the rights of the purchaser at the first sale, except in case no greater sum than the redemption money and in-

terest be bid, when he is entitled to a deed at once. *Lamb* v. *Richards*, 43 Ill. 312; *Massey* v. *Westcott,* 40 id. 160.

The assignment of the certificate of purchase to Cheney by the executors of Heaton's will, was not a redemption, and Patton, as a judgment creditor, had the right to redeem. *Lloyd* v. *Karnes*, 45 Ill. 62; *McRoberts* v. *Conover*, 71 id. 524; *Moore* v. *Hopkins,* 93 id. 505; *Sweezy* v. *Chandler*, 11 id. 445; *McLagan* v. *Brown,* id. 519.

Of the necessity of recording an assignment of a mortgage, to protect the assignee's rights, see Rev. Stat. chap. 30, secs. 20, 30, and chap. 95, secs. 8, 9; *Ogle* v. *Turpin*, 102 Ill. 148; *Edgarton* v. *Young*, 43 id. 465; *Reed* v. *Marble*, 10 Paige, 409; *Cornog* v. *Fuller,* 30 Iowa, 212; Jones on Mortgages, secs. 472, 820.

Application to set aside the sale of several distinct tracts *en masse*, must be made in a reasonable time. *Noyes* v. *True*, 23 Ill. 503; *Fergus* v. *Woodworth*, 44 id. 374; *Robbins* v. *Flemming*, 53 id. 196; *Hay* v. *Baugh*, 77 id. 500; *Rowand* v. *Carroll*, 81 id. 224.

Lands must be redeemed and sold in the same manner as they were sold in the first instance. *Downs* v. *Jackson*, 33 Ill. 464; *Oliver* v. *Crosswell*, 42 id. 41.

Messrs. Rinaker & Rinaker, for the appellee:

All persons interested in the subject matter of a suit in chancery must be made parties to such suit. *Gillham* v. *Carns*, Breese, 164; *Harrington* v. *Hubbard*, 1 Scam. 569; *Bonham* v. *Galloway*, 13 Ill. 68; *Smith* v. *Rotan*, 44 id. 506; *Alexander* v. *Hoffman*, 70 id. 114; *Hopkins.* v. *Roseclare Lead Co.* 72 id. 373; Jones on Mortgages, secs. 1394, 1425-1427.

Persons having an interest in the subject matter of suits in chancery, who had such interest at the time suit is begun, unless made parties, are not bound by the decree in such suit. See authorities above cited, and *Brush* v. *Fowler*, 36 Ill. 53; *McConnell* v. *Smith*, 39 id. 279; *Ohling* v. *Luitjens*,

32 id. 23; *Dunlap* v. *Wilson,* id. 517; *Bradley* v. *Snyder,* 14 id. 263; *Grob* v. *Cushman,* 45 id. 119, and 60 id. 201; *Richardson* v. *Hadsall,* 106 id. 476; *Avery* v. *Ryerson,* 34 Mich. 362.

When a prior mortgage is being foreclosed in chancery, the holder of notes secured by subsequent mortgages is a necessary party to such suit, although such holder of the notes is the assignee of such notes. See authorities above cited, and *Edgarton* v. *Young,* 43 Ill. 464; *Myers* v. *Wright,* 33 id. 284; *Grob* v. *Cushman,* 60 id. 201; *Gaytes* v. *Franklin Savings Bank,* 85 id. 256; *Clark* v. *Manning,* 95 id. 580; 1 Daniell's Chancery Practice, 260; Story's Equity Pleading, sec. 201; *Vansant* v. *Allmon,* 23 Ill. 26; *Olds* v. *Cummings,* 31 id. 188.

That appellee, Smith, now has the right to redeem from the decree and sale made under the foreclosure of the Heaton prior mortgage, and such right continues till his debt is barred by the Statute of Limitations, since he was not made a party to the suit in chancery foreclosing said mortgage, see *Bradley* v. *Snyder,* 14 Ill. 263; *Vansant* v. *Allmon,* 23 id. 26; *Pope* v. *North,* 33 id. 440; *Strang* v. *Allen,* 44 id. 428; *Hodgen* v. *Guttery,* 58 id. 431; *Steinkemeyer* v. *Gillespie,* 82 id. 253.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the first day of October, 1870, Andrew Rauch mortgaged the north-east quarter of section 5, township 12, north of range 6, west, in Macoupin county, to O. B. Heaton, to secure the payment of a certain sum of money, which mortgage was duly recorded. On the 21st day of February, 1877, Rauch borrowed from Prentiss D. Cheney, $4772, and gave two notes for the principal debt, and also two sets of interest notes for the payment of annual installments of interest. This loan Rauch secured by two mortgages on the quarter section of land in Macoupin county, and seventy acres of land in Sangamon county. These mortgages were also recorded.

At the August term, 1878, of the Macoupin circuit court, a decree foreclosing the Heaton mortgage was rendered, and on the 18th day of November, 1878, the quarter section of land was sold to satisfy the decree, and was bought by the executors of Heaton's estate. Cheney, to whom the second mortgage was given, was made a party to the bill, and he, and Rauch, the mortgagor, both answered the bill, in which it was admitted that Cheney held the second mortgages. This answer was filed on the 13th day of March, 1878. No redemption was made from the sale within the year, but Cheney bought the certificate of purchase from the Heatons. In May, 1877, one Vancil recovered a judgment in the circuit court of Sangamon county, against Rauch and one G. P. Cheney, for the sum of $1492. This judgment was assigned to James W. Patton, appellant, on the 12th day of August, 1879, by Vancil. On the 22d day of November, 1879, an execution was issued on the judgment, to the sheriff of Macoupin county, under which the sheriff levied on the quarter section of land which had been sold on the foreclosure decree. At the same time, appellant, as assignee of the judgment, redeemed from the sale under the Heaton decree of foreclosure. On the 18th day of December, 1879, the land which had been redeemed was sold by the sheriff, and bid off by appellant for the amount of the redemption money, and the sheriff made him a deed. Appellee, Henry J. Smith, claims that the Cheney notes and mortgages were sold and assigned to him on the 23d day of May, 1877,—the day before Heaton filed his bill to foreclose his mortgage ; and as such assignee, on the 24th day of May, 1880, he filed his bill to foreclose the Cheney mortgages, and to redeem from the sale under the Heaton decree. The appellant, Patton, filed his answer, in which he claimed to own the land under his redemption and purchase at sheriff's sale. On the final hearing the court rendered a decree allowing appellee, Smith, to redeem, and Patton appealed from the decree.

It is contended that Smith is entitled to redeem because he owned the Cheney notes and mortgages, and was not made a party to the bill brought by Heaton to foreclose his mortgage. In a bill to foreclose a mortgage, all persons interested in the premises, who claim under the mortgagor and subsequent to the mortgage, are necessary parties, and if they are not brought in, their rights will not be cut off by the decree. This may be regarded as a general rule in chancery proceedings.

But it is said that Heaton had no notice, either actual or constructive, that Smith had any interest whatever in the mortgaged premises, and hence he was not a necessary party to the bill. When Heaton filed his bill to foreclose the mortgage held by him, there was nothing on record to indicate that Cheney had sold or transferred his mortgages. If Smith had any interest in the mortgaged premises, there was nothing, so far as the record is concerned, to indicate that fact. No assignment of the Cheney mortgages was ever recorded. Indeed, no assignment was ever made other than the indorsement of the notes, which may be treated, in equity, as an assignment of the mortgages. But the assignment of the notes was not recorded. So far as record or constructive notice is concerned, it is plain that Heaton had no such notice. As to actual notice, we do not regard the evidence sufficient. Smith testified on this point, that in May or June, 1878, he was in Chicago, and saw Edgar S. Heaton, executor of O. B. Heaton, deceased, and informed him that he owned the two Cheney mortgages on the Rauch land, and would pay off his prior claim if it was legally established. In his cross-examination he says that he met Heaton at his office on Dearborn street—that his office was up-stairs. Heaton was put on the stand as a witness, and interrogated as to the interview testified to by Smith. He stated that in the months of May, June and July, 1878, his office was not on Dearborn street, but on Fifth avenue, on the east side of the street, between

Washington and Randolph streets, on the ground or street floor. He also testified that he has no recollection of Smith, and has no knowledge of receiving any notice from him,— that if he had been notified that Smith was interested in the premises, he would have made him a party to the foreclosure suit. This testimony of Heaton is not as direct and positive as it might be; but in view of the fact that Smith's testimony on other points of the case was shown to be so unreliable, we are inclined to the conclusion, from all the evidence, that no notice was given Heaton of the claim of Smith.

Cheney, who was shown by the record to own the second mortgages, was made a party to the bill, and in the absence of actual notice to Heaton it is claimed by appellant that he was under no obligation to look beyond the record, and although Smith may have had an assignment from Cheney, his rights are concluded by the decree. We do not find it necessary in this case to determine whether Smith would be entitled to redeem if he had purchased the notes and mortgages of Cheney on the 23d day of May, 1877, as claimed by him, because in the view we take of the evidence we do not think the testimony sufficient to establish the fact that Cheney sold Smith the notes and mortgages, and hence the decision of the other question is not material. The notes purport to be assigned on the 23d day of May, 1877, by Cheney, to Smith, and both of these parties testify that the notes were sold and assigned on that date. But there are facts and circumstances connected with the transaction, which, in our judgment, are sufficient to overcome the complainant's testimony upon this point. As to Cheney, from the time of the alleged transfer of the notes and mortgages to Smith, his acts and conduct in regard to the securities can be explained on no other theory than that he was still the owner. His answer was filed long after the purported assignment, in which he claims to hold the notes and mortgages. On January 31, 1878, he wrote the mortgagor, Rauch, that the first year's

interest on his loan would fall due on February 21. "When the time arrives, send me the money by express, and I will send you the interest note by return mail." On February 21 of the same year, he wrote the mortgagor again that he would do anything to ease along his payments. He also urged him to write Gen. Rinaker to put in a new plea in the Heaton foreclosure case,—that he is satisfied the debt is paid. On May 2 he wrote that the time fixed had arrived for the payment of interest due February 21, and requested that a bank check should be sent, and he would send receipt. On June 26 he again wrote, urging the payment of interest. After the decree of foreclosure had been rendered and the land sold, for the purpose, doubtless, of protecting his interest in the land, Cheney bought the certificate of purchase. If he had sold the notes and mortgages to Smith in May, 1877, as claimed, why should he undertake to collect the interest on a debt he did not own, and manifest so great an interest in the matter? He was indorser of the notes, but the lands embraced in the mortgages were ample security for all the mortgages, so that his liability in this regard could not account for the interest he manifested in the matter. Indeed, there is no rational theory upon which the conduct of Cheney can be explained, except, only, that he still owned the notes and mortgages.

We now come to the testimony of appellee, Smith, which, it is claimed, has an important bearing on the question. He testified that he purchased the notes and mortgages of Cheney on the 23d day of May, 1877, and paid in cash for them $4800, on that date. Smith, as appears from his testimony, was a resident of New York City, and an attorney at law by profession. On cross-examination he refused to answer where he got the money he paid for the mortgages, how long he had it on hand, and whether it consisted of bills or specie. He also declined to tell where he kept his bank account, or whether he had a bank account. Indeed, on the first examination the witness refused to answer any question in regard

to the payment of the money to Cheney which would throw any light on the transaction. The court, on application, made an order requiring the witness to answer certain questions which he had refused to answer, and all questions which properly pertained to the matter in dispute. Upon a further examination, under this order, Smith undertook to account for the fact that he had such a large amount to invest in mortgages in the west. The principal part of the money, as he says, was received from three persons: From Arthur M. Smith, his brother, in April, 1877, $3000; from Louise Stevens, $2500; from John D. Morgan, in March, 1877, $1500. Testimony was taken by appellant which shows clearly that as early as 1872 Arthur M. Smith was insolvent. In 1874 or 1875 he was in jail in New York City, charged with perjury. He remained in jail ten or twelve months. He contributed nothing to the support of his family. His wife testified, and she is corroborated by other evidence, that he continued insolvent from 1872 until his reputed death, in 1879. He left New York in August, 1876, and went west, peddling lamp chimneys. In the spring of 1877, when appellee claims to have received $3000 from him, he had neither money, property nor credit, and if any reliance is to be placed on the evidence, it is apparent no money was received by appellee from this source. John J. Allen testified: "I knew Arthur M. Smith first in the latter part of the year 1874. He was then in the custody of a deputy United States marshal, in my office, in Brooklyn. He was under arrest on a charge of perjury. It was on the 28th day of November, 1876. I was his sole counsel, and defended him in the proceeding, and finally procured his discharge on a technical defence. His brother, Henry J. Smith, was frequently the medium of communication between myself and Arthur M. Smith, who, during the time, was in jail, through inability to give bail, which was reduced as low as $1000. I had a dozen or more interviews with Henry J. Smith. He was usually in attendance at the

proceedings in the case. I received from Henry J. Smith, in the early history of the case, a small retainer. I was never able to collect anything more, though they both frequently promised to pay me. Arthur M. appeared entirely destitute. I never saw him after his discharge. During the years 1875, 1876 and 1877 I saw Henry J. Smith at different times, and spoke to him about the balance due me from Arthur and himself, and he always represented he did not know where Arthur was, and that he had no means of obtaining the amount. I endeavored to obtain from him his brother's address, but never succeeded." As respects Louise Stevens, from whom Smith claims to have received $2500 of the money, she seems, from the testimony, to have been his mistress, and had, in the spring of 1877, no money or property whatever. As to Morgan, who, Smith claims, paid him $1500, the evidence shows he was hopelessly insolvent, broken down in health, and a short time after (in the spring of 1877,) he died in a New York hospital, in a destitute condition. One witness says that Morgan frequently applied to him for money to pay for food and other necessaries of life, and he was in the habit of furnishing small sums of from twenty-five to fifty cents. From this evidence it is plain that appellee never received money from the parties who he testified furnished him the funds with which he purchased the notes and mortgages from Cheney, in May, 1877.

It will be observed that appellee has produced no check, draft, or written evidence of any character, to show the payment of the money to Cheney. If Smith paid Cheney $4800, as claimed, it may be presumed that the payment might be established by the production of a check; but no such evidence was produced, and in order to explain this weak point in the case, Smith swears that the payment was made in currency, and the money was carried around in his pocket for several weeks before it was paid. This might be true, but it is so inconsistent with the manner in which business is

transacted in a large city, between intelligent business men, that it casts a suspicion on the entire transaction.

But aside from this view, it is apparent, from the evidence, that in the year 1877 appellee, Smith, did not have the means to purchase the Cheney notes and mortgages. The evidence shows that appellee, during the year 1877, was not able to pay his board bill, and he and his wife were turned out of the boarding house for a failure to pay such bill. Marie E. Blake testified that appellee and his wife commenced boarding with her on the 1st day of May, 1877, and remained until October 1, when she turned them off for a failure to pay. The first two weeks he paid promptly, but the third week failed to pay, and after that the indebtedness was never paid, but steadily increased. After leaving Blake's, he went to board with Elizabeth Edson, and remained there from October to January 1, when he was also turned off for a failure to pay. John Reppin, who occupied the same office with appellee from May 1, 1877, to March 1, 1879, testified that he knew appellee well; that appellee frequently called on him for small loans of from fifty cents to a dollar; that he often made such small loans, and often had to wait several weeks for his money. In the fall of 1877 he knew appellee to offer for sale two law books, at much below their value, for the purpose of raising money. In addition to this, the record shows judgments for a large amount standing unsatisfied against appellee.

From the evidence contained in this record it does not seem at all probable that appellee had the money required to purchase the mortgages. It is true that the notes purport to have been assigned to appellee on May 23, 1877, but the evidence in the record overcomes the presumption that appellee was a purchaser. If, then, appellee did not purchase the notes and mortgages before the bill was filed, he was not interested, and was not a necessary party, and when Cheney, the party shown by the record to be a second mortgagee, was made a party to the bill, the complainant did all that the law required.

It is also urged that the sale was bad because the quarter section of land was sold *en masse,* without being first offered in subdivisions.   In the mortgage the land was described as a certain quarter section in Macoupin county.   The decree ordered a sale of the land described in the mortgage, and the master was under no obligation to subdivide the tract and sell it in parcels.   Where the mortgage and decree describe the land as a single tract, it is not the duty of the master to divide the land into parcels in making a sale.   If several distinct tracts were ordered sold, then it would be the duty of the master to sell each parcel separately.   *Davis* v. *Dresback,* 81 Ill. 394.

The decree of the circuit court will be reversed, and the cause remanded, with directions to that court to dismiss the bill so far as it relates to the north-east quarter of section 5, township 12, north, range 6, west, in Macoupin county.

*Decree reversed.*

Mr. JUSTICE SCOTT:   I do not concur in this decision.