MADDOX *et al. v.* BRAMLETT *et al.*

1. The complaint alleging that a certain payment was in full of principal and interest, for the whole tract, of land, and the receipt given at the time showing that it was for part of the tract only, and the amount of the payment being in excess of the principal, but short of both principal and interest, the allegation was not established.
2. When the title to land is held by two jointly, with an outstanding right of redemption from both, redemption by payment to one only, is not available as against the other unless he authorized or ratified the redemption as made, he having received nothing for his interest.

December 9, 1889.

*Allegata* and *probata.* Payment. Evidence. Title. Redemption. Equity. Before Judge WELLBORN. Hall superior court. July term, 1889.

On November 16, 1887, Martha Bramlett *et al.*, as the only heirs at law of Elizabeth Maddox (except H. C. Maddox), brought their bill against H. C. Maddox, F. M. Whelchel, and B. B. Whelchel as administrator of Aaron Whelchel, alleging (so far as is now material) as follows: Elizabeth Maddox was the daughter of John Whelchel, and the wife of H. H. Maddox, who died about 1858, leaving her in possession of all of land lot 107, and 100 acres of lot 110 adjoining lot 107, the whole tract consisting of 350 acres, in the 11th district of Hall county, which she had received from her deceased father and in the exclusive possession of which she had been for ten years or over. It was administered upon as the estate of her husband, and sold at administrator's sale to pay his debts. In order that she might keep the land, her brothers, Aaron Whelchel, of Hall county, now dead, and F. M. Whelchel, of Lumpkin county, agreed with her that they would buy it in for her and allow her to redeem it at the price paid by them. In pursuance of this agreement, Aaron bid off the land at a little over $400, which he paid himself, F. M. not

paying anything; but Aaron, relying on the promise of
F. M. to assist him in advancing the money for the
benefit of their sister, took the deed to both of them.
Shortly afterward, she sold enough of the land to her
daughter, Mrs. Martha Bramlett, to pay off the whole
purchase money with interest, with the consent of
Aaron, the part sold being 150 acres cut off the north part
of the tract and now owned and possessed by Mrs. Bram-
lett, and received from her $506, out of which Mrs. Mad-
dox paid Aaron in full for the amount advanced and paid
by him for himself and for F. M. for the whole tract.
Aaron, through procrastination, failed to execute a con-
veyance to her; and she, having the fullest confidence
in her brothers, neglected to demand one. From the
time of the administrator's sale up to her death, she was
in the exclusive adverse possession of the entire tract of
land, and during the whole time, over twenty years, she
claimed to be owner in fee, and paid all the taxes; and
neither Aaron nor F. M. paid any of the taxes or ex-
ercised any ownership over it or any part of it, but
always recognized it as her land. After the death of
Aaron and of Mrs. Maddox, her son, H. C. Maddox,
seeking to defraud complainants and knowing the above
facts, persuaded F. M. to make him pretended convey-
ances to the land; and F. M., not understanding the
fraudulent intent of H. C., said if he had any right in
the land H. C. might have it. But F. M. had in equity
no right, title or interest in the land. It is now in the
possession of one Ellis, who cultivated it under Mrs.
Maddox until her death, and continued in possession as
the tenant of all the heirs at law with the knowledge
and consent of H. C. There is no administration upon
the estate of Mrs. Maddox and no necessity for any;
her estate owes no debts. Complainants brought pro-
ceedings for partition against H. C., and he fraudulently
set up that they had no title to the land. The prayers

were, that the land, except 150 acres belonging to Mrs. Bramlett, be decreed to belong to the heirs at law of Mrs. Maddox; that commissioners be appointed to partition it between them and H. C. Maddox, or to sell it and divide the proceeds; that he be enjoined from setting up his defence at law to their application for partition, and that said application await the trial of this bill; etc.

Defendants answered, in substance, as follows : Elizabeth Maddox never owned any part of the land, and never claimed any right to it. H. H. Maddox died in possession of it and claimed it in his own right. After his death, his administrator, in November, 1860, sold the land at administrator's sale, and it was bought by Aaron and M. F. Whelchel for $435, half of which was paid by Aaron and the other half by M. F., upon which payment the administrator executed to them a deed to the land. At the time of the sale, Mrs. Maddox was living on the land, was poor and had a large family to support; and Aaron and M. F. allowed her to remain, cultivate and enjoy the land, free of rent or other charge except taxes. On January 11, 1864, Aaron sold to Mrs. Bramlett 150 acres of the land for $506 in Confederate money, and she went into possession of it, but no deed was ever made to her. Aaron and M. F. did not buy the land for their sister, and she never paid them a dollar for it; she never in her lifetime claimed to have bought it, and never disputed the title of Aaron and M. F. M. F. sold 125 acres of the land to H. C. Maddox, who is and has been since said purchase in possession. The balance belongs jointly to Aaron's estate and to said M. F., and H. C. is their agent and is managing it for them. Complainants have never had any interest in the land or any part of it. Aaron never promised Mrs. Maddox to make her a deed to it, nor did she so desire or expect. It is untrue that H. C.

after her death induced M. F. to make him a deed for the purpose of defrauding complainants. He bargained for the 125 acres from M. F. in 1874, with the understanding that Mrs. Maddox should remain on it and enjoy the rents, etc. of it during her life ; but the deed to him by M. F. was not executed until July 14, 1885. After the death of Mrs. Maddox, H. C. took possession of the land and rented it to Ellis; etc.

The material parts of the evidence are stated in the decision. A verdict and decree for the complainants were rendered ; and the defendants moved for a new trial on the ground that these were contrary to law and evidence. Exception was taken to the overruling of this motion.

J. B. Estes, S. C. Dunlap and Howard Thompson, for plaintiffs in error.

W. F. Findley and Perry & Dean, contra.

Bleckley, Chief Justice.

1. According to the complaint filed by the plaintiffs below, Mrs. Maddox had an agreement with her two brothers, Aaron and M. F., that they would buy in the land for her and allow her to redeem it at the price paid by them. The complaint also alleges that $506 paid to Aaron by Mrs. Bramlett was in full of principal and interest for the amount advanced by him and paid by him for himself and M. F. for the whole tract. This payment was evidenced by a receipt in these terms :

"Gainesville, Ga., January 11th, 1864. Received of Martha A. Bramlett $506, and for which A. and M. F. Whelchel is to make her a deed to part of lands 107 and 116, to the amount of 150 acres, in the 11th district of Hall county, Georgia.          "A. Whelchel."

The reasonable and natural construction of this receipt is, that the payment was for the 150 acres only, whereas the whole tract contained 350 acres. Moreover, the amount was not sufficient to cover the princi-

pal and interest of the payment made by Aaron and M. F. for the land when bought in for Mrs. Maddox. Their purchase was made in November, 1860, at the price of $435, and the administrator from whom they bought testifies that the land was sold for cash. To a mathematical certainty, therefore, the payment covered by the receipt was not for the whole tract; or if so, the settlement was not upon the basis either of refunding the principal only, or of refunding both principal and interest.

2. Another consideration is, that even if Aaron received payment for the whole tract, and recognized the right of his sister, Mrs. Maddox, to a conveyance, this, as it appears to us, would not divest his brother, M. F., of title to his half of the land. That M. F. advanced half of the purchase money to pay for the land at administrator's sale, although he advanced it to Aaron a ter the deed was taken, is quite certain: and it is equally certain under the evidence, that he got none of it back. No authority appears in the record from him to Aaron to collect his part of the purchase money from Mrs. Bramlett or Mrs. Maddox; and while, as it seems, he ratifies the payment made by Mrs. Bramlett, taken and understood according to the receipt, we see nothing that obligated him to treat it as a payment for the whole tract. If he had notice of it as such and ratified it, that would bind him; but without such notice we see not how he would be affected by it. The receipt stipulates for nothing more in his behalf than to join with Aaron in conveying one hundred and fifty acres to Mrs. Bramlett,—and this we understand he is not resisting; but to deprive him of his half of the residue of the tract without his being paid for it, would seem to be contrary to law and equity. ·As the title to half the tract was in him, he had a right to repose upon its remaining there until it passed out by his consent. The

possession of his sister, Mrs. Maddox, would not be adverse to that title, until he received notice that she was claiming the land as her own, and not occupying it by virtue of the arrangement made with the brothers when it was bought in at the administrator's sale. Her possession was permissive until she redeemed the land from those holding the legal title, or until she gave notice to both of them that she repudiated the contract to redeem and intended to hold independently of it. That she paid taxes can be well accounted for on the ground that she had the exclusive use of the land until she died in 1885, and received all the profits. It must not be overlooked that according to the pleadings of the plaintiffs below, M. F. was as much a party to the agreement with Mrs. Maddox as Aaron was. The land was to be redeemed as to his interest, as well as to that of Aaron ; and the question which presses now is, how was the half-interest of M. F. redeemed, and when? It seems that Aaron got something for his,—at least to the extent of one hundred and fifty acres; but how and when did M. F. get anything for his interest? We think the case should be tried over for an answer to this question at least.                                   *Judgment reversed.*