BOYD *v.* WILSON *et al.*

1. The levy of a tax *fi. fa.* describing the property seized as "¼ of lot No. 931, in the 12th Dist. and 1st section of Lumpkin County, Georgia," is sufficiently definite and certain, the meaning of the same being not any particular fourth, but one fourth of the lot undivided.

2. The year for redemption of property sold for taxes runs from the date of the sale and not from the time when the sheriff's deed is recorded.

3. A purchaser at a tax sale duly made under a legal levy, who is neither implicated in nor aware of any fraud contemplated by the selling officer, is not affected thereby.

December 23, 1890.

Levy and sale. Tax-executions. Redemption. Fraud. Before Judge WELLBORN. Lumpkin superior court. April term, 1889.

After the former decision of this case as reported in 84 *Ga.* 34, Boyd amended his bill by these allegations: When the sheriff exposed Boyd's land for sale, he had already levied upon and advertised for sale on that day a large amount of Parker's property under five justice court *fi. fas.* which were in the hands of Price & Charters, attorneys at law and relatives of Wilson. Had the sheriff sold the lands thus levied on, in the order in which he had advertised them, he would have realized enough to have paid off all the *fi. fas.* in his hands, together with the tax *fi. fa.* under which he sold Boyd's

land to Wilson; but the sheriff fraudulently postponed the sale of the lands levied on under the justice court *fi. fas.*, for the sole purpose of reaching Boyd's property and subjecting it to the payment of Parker's debt, because the sheriff was personally interested in one of the *fi. fas.* The levy of the tax *fi. fa.* is void, because it does not plainly describe the property levied upon, nor the amount of the interest of Parker therein, nor does the advertisement by the sheriff give such description. In January, 1890, Boyd tendered to Wilson the amount of his bid, $1.50, together with ten per cent. interest thereon, to indemnify him against any loss because of the illegal and fraudulent sale, and such tender was made in good faith, and is a continuing tender.

Wilson answered that the other property mentioned was advertised for sale under other process than the tax *fi. fa.*; that such other process may have been in the hands of Price & Charters, though Wilson had no notice of it and no knowledge of it, but it is untrue that he and Price & Charters, or either of them, conspired in any way to postpone such other sales; on the contrary, Wilson never spoke to either Price, Charters or the sheriff about his intention to buy the land in question, nor did he in fact intend to buy it up to the very moment it was exposed for sale; that he happened at the sale by accident, did not even know that this land was going to be sold, and the only reason he bid at all was because the bidding was so low. He asserts that the levy of the tax *fi. fa.* sufficiently described the property and showed the interest of Parker. He declined the tender made in the amended petition; and asserted that if Boyd ever had any title to the property it had become void, because the property had been sold to Wilson under the tax *fi. fa.*, and Boyd had not redeemed it within the time allowed by law.

On the trial Boyd introduced the *fi. fa.* of Sears against Parker under which the property in question was sold on November 2, 1886, with the entries thereon, and the sheriff's deed made to Boyd in pursuance of the sale, and recorded on January 18, 1887. Also the tax *fi. fa.* under which the land was sold to Wilson on the first Tuesday in April, 1887, the levy, dated February 24, 1887, being "on lots of land Nos. 1103, 311, and ¼ of lot No. 931 in the 12th Dist. and 1st section of Lumpkin County, Georgia, as the property of John A. Parker, pointed out by the said Parker"; and the deed from the sheriff to Wilson in pursuance of the sale under this levy, dated June 16, 1887, and recorded August 24, 1888.. This *fi. fa.* also contained an entry of levy, on May 6, 1887, on other property of Parker, and of sale of the same on June 7, 1887, for an amount sufficient to extinguish the balance due and leave $14.51 to be applied to other *fi. fas.* in the sheriff's hands. Also the sheriff's advertisement of sales for the first Tuesday in April, 1887, in which the notice of intention to sell the land levied on under the justice court *fi. fas.* preceded that as to the land in question; and the sheriff's advertisement of postponed sales for the first Tuesday in June, 1887, which was an advertisement of intention to sell the land levied on under the justice court *fi. fas.* One of these was against Parker as principal, and others (including the sheriff) as guarantors. Soon after Boyd bought the property he leased it to one who took possession and worked the land for gold in the spring of 1887 and a good while before it was sold under the tax *fi. fa.* At the sale under this *fi. fa.* Boyd was present, and gave notice to all bidders that he had bought it at a previous sheriff's sale and had paid for it and was in possession. When the property was put up only two bids were offered, one by Charters of $1, the other by Wilson of $1.50, and it

was knocked off to Wilson. Neither at that time, nor for a long time afterwards, did Boyd think that Wilson intended to assert any serious claim to the lot; he asked the sheriff twice if he had made a deed to Wilson, and the sheriff always replied that he did not remember whether he had or not. Boyd did not know that Wilson's claim would be insisted upon until Wilson's deed was put on record.

For the other facts see the opinion.

M. G. BOYD, by HARRISON & PEEPLES, for plaintiff.

PRICE & CHARTERS, by brief, for defendants.

BLECKLEY, Chief Justice.

After a previous writ of error in this case was disposed of ( *Wilson* v. *Boyd*, 84 *Ga.* 34, 10 S. E. Rep. 499), the case was tried again in the court below and resulted in a nonsuit, to the granting of which Boyd, the plaintiff, excepted.

1. The first question now to be considered is whether the levy of the tax *fi. fa.* upon the property in controversy is sufficiently certain and definite. The deed made by the sheriff to Wilson, the purchaser at the tax sale, described the property as "all that tract or parcel of land situate, lying and being in the twelfth district and first section of Lumpkin county, and known as the undivided one fourth of number nine hundred and thirty-one, containing in the whole lot forty acres, more or less," whereas the levy and sheriff's advertisement both described it thus: "¼ of lot No. 931, in the 12th Dist. and 1st section of Lumpkin County, Georgia." The point made is that the description in the levy and advertisement does not sufficiently indicate that one fourth of the lot undivided was seized and advertised. We think the description signified this and could signify nothing else. It did not specify or indicate any particular fourth of the lot, and if it would apply as well to one fourth as another it could not have been

intended to point out or designate any particular fourth. There is nothing, therefore, for it to signify but some part of the lot in an undivided state, and that part is definitely indicated as one fourth, neither more nor less. In Coke upon Littleton, vol. 2, 190 (b), it is said: "Also, if a man seised of certaine lands infeoffe another of the moitie of the same land without any speech of assignment or limitation of the same moity in severaltie at the time of the feoffment, then the feffee and the feffor shall hold their parts of the land in common. And the like law is, if the feoffment be made of a third part or a fourth part, &c." In Adams v. Frothingham, 3 Mass. 352, it was held that a conveyance of a moiety of a piece of land in quantity and quality creates an estate in common. But it would seem from the language of Littleton quoted in the above passage that the words quantity and quality in this description were superfluous. And see Lick v. O'Donnell, 3 Cal. 59, cited in *McAfee* v. *Arline*, 83 *Ga.* 645. In *Keaton v. Forrester*, 63 *Ga.* 206, the decision was put by this court, not upon the insufficiency of the levy, but upon the failure of the evidence to establish title or possession in the defendant in *fi. fa.* so as to change the *onus.*

We think what we have held above is correct, but suppose it to be incorrect as a general rule of law, and so it would be perhaps tested by the case of Ronkendorff *v.* Taylor, 4 Peters, 348, yet under the special facts of this particular case we think neither Parker nor Boyd could complain as against Wilson of any ambiguity in the levy and advertisement. Parker was the tax debtor, and the property was levied upon, advertised and sold as he pointed it out to the levying officer. Boyd was present at the sale and understood that the same undivided fourth of the lot which he had purchased at a previous judicial sale was being again sold. He gave notice of his prior purchase, but made no objection to the terms of the levy or advertisement

under which the second sale was proceeding. His failure to do so indicates that he then construed the levy and advertisement as we do now; and no doubt Wilson, the bidder and purchaser at the tax sale, understood, as Boyd did, that the property being sold was the same which Boyd had previously purchased. This matter of ambiguous description seems to have been an afterthought. It was not even suggested in this case until after the first trial. On the contrary, the theory of the plaintiff was that the interest of Parker sold for taxes was the same interest which Boyd had previously bought, namely an undivided fourth of the lot.

2. The next question is as to whether the tender to redeem from the tax sale was within time, it having been made after the expiration of twelve months from the time of the sale but within twelve months after the sheriff's deed to the purchaser was recorded. The code settles this question in section 898, which reads as follows: "Whenever any land is sold by virtue of a tax execution issued under this code, the owner thereof, or any administrator, executor, or guardian, or other trustee of the defendant in execution, shall have the privilege of redeeming said land thus sold within one year by paying the purchaser the amount paid by said purchaser for said land, with ten per cent. premium thereon from the date of the purchase to the time of payment." Certainly there is no hint or intimation that the time is to be computed from the recording of the deed. Manifestly the time of the sale is the point from which the limitation runs.

3. The fraud set up in the amended petition was not proved so as to affect the purchaser at the tax sale. He had no part or lot in it. So far as he was concerned the sale was legal; and he made his purchase fairly and openly. The object of the bill is to set aside and annul his title. The facts of the case, as they appear in the record, do not furnish any valid ground for so doing.

We have already ruled that although he paid but a small price, yet, if he purchased fairly at a legal sale, he was entitled to take the benefit of his purchase. We see nothing in this second appearance of the case before us to warrant a court, or a court and jury, in branding this purchase as fraudulent or otherwise invalid. Tax titles are protected by the code equally with those depending on sales made under judgments of the superior court. Code, §884. The pointing out of property to be levied upon under tax executions is governed by section 891, and not by section 3641, of the code.

There is no error in any of the assignments contained in the bill of exceptions, nor in the judgment of nonsuit.

*Judgment affirmed.*

On January 17, 1891, before the above judgment was made the judgment of the superior court, Boyd petitioned for a rehearing in the Supreme Court, on the ground that the first specific assignment of error in his bill of exceptions was not decided by that court, and that the same, together with the facts connected therewith, must have been overlooked, else the exception would have been sustained. This exception was, that the superior court erred in sustaining the levy of the tax *fi. fa.* when it appeared, both by the levy itself and by the other evidence, that Parker pointed out said property when he was not in possession of it, and when it further appeared that there was amply sufficient other property in the possession of Parker to have made the money due on the tax *fi. fa.* The petition invoked the application of section 3641 of the code.

*Per Curiam.* Petition for rehearing denied, this court having already decided in the same case that section 891 of the code applies to pointing out property under tax executions. See 84 *Ga.* p. 36. Section 3641 of the code applies, not to tax executions, but to executions founded on judgments.