## COONEY *v.* CITY OF ATLANTA.

1. Under section 3 of the act approved November 29, 1902 (Acts 1902, p. 332), the deputy clerk of council of the City of Atlanta is authorized to sign executions issued by authority of the municipality.

2. The levy of an execution should be signed by the levying officer. If a deputy signs the name of the levying officer under the latter's express

direction, and the levying officer specially adopts the act of his deputy in signing his name to the levy, and proceeds to enforce the levy as his own act, the levy is not invalid because the levying officer's name is signed by his deputy.

3. An execution in rem against specific property may be levied on the entire property, though the value of the property may greatly exceed the amount of the execution; but if the property be susceptible of division, it should be sold in parcels in such a way as to discharge the execution with as little loss to the owner of the property as possible.

4. An abutting-land owner upon whose property a street assessment is made is not entitled as a matter of right, under section 150 of the Code of Atlanta, to have his assessment divided into installments, unless the same has been transferred to the contractor doing the work.

MARCH 15, 1911.

Petition for injunction. Before Judge Bell. Fulton superior court. November 8, 1910.

*Shepard Bryan,* for plaintiff.

*J. L. Mayson* and *W. D. Ellis Jr.,* for defendant.

EVANS, P. J. R. L. Cooney filed his petition against the City of Atlanta and its marshal, wherein he sought to enjoin the city from further proceeding with a levy of a fi. fa. for street improvements. The petition set up, that he was the owner of certain property fronting on Marietta street in said city; that the city had contracted for the paving of this street with Thornton & Mason, under a contract and certain city ordinances, both of which latter were set out in the petition; that the plaintiff is informed that the paving was completed about May 29, 1910; that after May 28 the plaintiff received from the city what purported to be a notice, dated May 24, of the amount of his assessment, giving him thirty days within which to avail himself of the option of paying one fourth cash and the remainder in three equal annual installments; that on June 27, and within thirty days after the plaintiff actually received at his office the above notice, he mailed to the street-improvement collector his check for one fourth cash payment and offered to make his notes for the other three installments; that his check was returned and the city refused to accept same, claiming that he had waited more than thirty days from the *date* of the city's notice to him, thereby losing his option of one fourth cash and annual installments for the balance; that the city had issued and levied a fi. fa. upon his property and was proceeding to advertise the same for sale; that C. E. Adams, deputy clerk of council, had no authority to issue and sign the fi. fa. so levied;

that the levy purporting to be signed by Robert E. Riley, city marshal, was not in fact signed by him but by some other person; that for these reasons both the fi. fa. and the levy are void; and that the fi. fa. was levied upon property of the value of fifty or sixty thousand dollars, and is excessive and void. The city and the marshal answered, admitting many of the allegations of the petition, but denying that the fi. fa. was illegally issued and that the levy thereof was illegal. It was affirmatively set up that the plaintiff had failed to avail himself of the city's option to pay one fourth of the assessment cash within thirty days from the date of the notice to him of the completion of the paving, and that the city had the right to proceed to collect the entire amount of the assessment. On the interlocutory hearing the court refused to temporarily enjoin the further progress of the execution, and the plaintiff excepted.

1, 2. We will first notice the alleged irregularities and illegalities in the issuance and levy of the fi. fa. for street improvements. The fi. fa. was signed by the deputy clerk of council. Under an amendment to the charter of the City of Atlanta, the deputy clerk of council is expressly authorized to issue executions and to sign the same in his own name as deputy clerk of council. Acts of 1902, p. 332, section 3. The entry of levy on the execution purports to have been signed by the city marshal as the levying officer. The petition charges that the city marshal levied the execution, but that the entry of levy was not in fact signed by him, and that no one had authority to sign his name. It was made to appear at the hearing that the marshal's name was signed to the entry of levy by his deputy under the direct authority and instruction of the marshal, who expressly approved the act of his deputy and who was proceeding to enforce the levy at the time the plaintiff sought to restrain him from so doing. The levy under these circumstances was not invalid. *Vickers* v. *Hawkins,* 128 *Ga.* 794 (58 S. E. 44).

3. The execution for street improvement was issued against the property. It was alleged that the levy was excessive, because the execution issued to enforce the collection of $323.73 and was levied on the entire lot, which was of the value of $60,000. The execution issued in rem, and no point is made that it was not properly issued in this particular. An execution in rem against

specific property may properly be levied on the entire property, though the value of the property greatly exceed the amount of the execution; but a sale of the entire property under such levy should not be made, where the property is susceptible of subdivision. *Wilkinson* v. *Holton,* 119 *Ga.* 557 (46 S. E. 620). Though the execution was levied on the entire property, it is averred in the sworn answer of the city and the marshal that the marshal is directed by the fi. fa. to sell only so much of the property as is necessary to discharge the fi. fa. A copy of the fi. fa. is not appended. But it does appear from the answer of the marshal, "that he only proposes to sell so much thereof as is necessary to bring the principal, interest, and costs due thereon, and that he only proposes to sell so much of said property, offering the same foot by foot until a sufficient amount thereof has been offered and sold, to satisfy the fi. fa. levied thereon." There is no charge in the petition that the city intends to sell the property in bulk, and no evidence was submitted that the marshal intended to sell the entire property without first offering it in parcels. Inasmuch as no complaint is made that the entire property will be sold at one time, and the levying officer disclaims any such intention, we will not impute to the officer such conduct as might render the sale void.

4. The plaintiff contended that under section 150 of the Code of the City of Atlanta he was entitled to thirty days after the receipt by him of notice from the city that the paving was completed, in which to make a payment of one fourth cash and make his notes for three annual installments for the balance. This section of the city code is as follows: "The City of Atlanta is hereby authorized and empowered to transfer, in payment of debts against said city, bills and executions in favor of said city for the cost of curbing, sidewalks, granite blocks, and other street pavements, and bills or executions for sewer assessments, whether such bills and executions be held by said city against abutting-land owners or against street-railroad companies, for furnishing and paving curbing, sidewalks, granite block, and other street pavements and sewer assessments. The lien in favor of said city against abutting land and the owners thereof, and against street-railroad companies, now provided by law, shall not be impaired or in any manner affected by this act, but the same shall exist and may be enforced in the

name of the city for the benefit of the transferee until the assessment shall be paid. Such bills and executions against street-railroad companies, when so transferred, shall be paid and collections shall be enforced as is now required and prescribed by law. Such bills against abutting-land owners, when so transferred, shall become due and payable as follows: payment shall be made within thirty days after the completion of the work, and presentation of the bill therefor to the person liable for the same, or his agent. If the person liable should not prefer to pay all the assessment within thirty days, he may pay twenty-five per cent. thereof in cash within thirty days and twenty-five per cent. per annum each year for three years thereafter, with interest at the rate of seven per cent. per annum on all such deferred payments; provided, however, that this privilege of paying part cash and postponing the payment of the balance shall not exist unless the person liable for the assessment shall, within the thirty days aforesaid, pay the twenty-five per cent., and shall, in writing delivered to the transferee, declare his election to have the payment of the balance postponed as is hereinabove mentioned." The city had the right, in the first instance, to contract to pay cash for street improvements, and require abutting-property owners to make full cash payment of their proportionate cost upon completion of such improvements. By this charter amendment the city is authorized to transfer to the contractors bills and executions for such improvements; it evidently being the intention of the act primarily to give the city this authority, and to provide for the payment of these assessments in installments, provided the city should transfer the bills or executions to the contractor. The plaintiff alleges that there had been no transfer of these assessments against abutting-property owners. So that the plaintiff was not entitled to the benefit of the provision of the city's charter above quoted; and the city had the right to proceed immediately, in its own behalf, to enforce payment of the same. We are cited to no other provision of the city's charter or ordinances permitting the city, without transferring to the contractors the bills or executions for street improvements, to divide the assessment into installment payments. Section 150 does not require the city to extend this privilege to the property owner. The notice which it gave to the property owner seems to have been nothing more than an offer of a gratuity on the part of the city. The

plaintiff did not comply with the terms of the gratuitous offer, and therefore can not complain that the city is proceeding with the collection of the entire assessment against him. So that there was no abuse of discretion in refusing a temporary injunction.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*