### HOWLAND *v.* DONEHOO *et al.*

1. An execution issued upon a judgment of foreclosure of a mortgage on land, which is described in the mortgage, judgment, and execution as one entire tract, may be levied on the entire tract and the levy will not be excessive, although the value of the land may be much greater than the amount sufficient to satisfy the execution. Nor will a sheriff's sale of the entire tract, made in pursuance of such a levy, be void merely because the tract was capable of subdivision so that by a sale of a less quantity than the whole a sum would be realized sufficient to discharge the fi. fa.

2, 3. Under the facts of this case the sheriff's sale was not void, either because of inadequacy of consideration, or for the reason that a valid

affidavit of illegality by the defendant in fi. fa. was delivered to the sheriff prior to the sale.

MAY 19, 1914.

Equitable petition. Before J. M. Hunt, judge pro hac vice. Floyd superior court. July 3, 1913.

Mrs. Medora E. Howland gave the Exchange Bank of Rome two mortgages on a parcel of land situated in the city of Rome and known as the "Toll House and Lot," described by metes and bounds, to secure respectively two debts owing by her to the bank, one for $1,000 principal and interest, and the other for $500 principal and interest. Both mortgages were duly foreclosed and executions issued thereon, in which the property ordered to be sold was described in the same way as set forth in the mortgages. The execution for $1,000 principal and $88.55 interest, together with cost, was levied on the mortgaged property, which was described in the entry of levy in the same manner as in the mortgage and the execution; and it was advertised for sale as one parcel of land with the same description contained in the mortgage execution and levy. An attorney at law for the mortgagor prepared what purported to be an affidavit of illegality, in order to stop the sale of the property under the mortgage execution, on the grounds: (*a*) that the mortgagor had never been served with a copy of the petition and rule nisi in the foreclosure proceeding, that she did not appear and plead therein nor waive service in any way, that she was not within the jurisdiction of the court at the time the entry of service was made, and had no knowledge of the proceeding until after the levy; and (*b*) that the return of service by the deputy sheriff, to the effect that he had served her personally with a copy of the foreclosure proceeding on a given date, was untrue and that she traversed such return as entered. This affidavit began as follows: "Georgia, Floyd County: In person before me came the defendant in the above-stated case, who being duly sworn says under oath," etc.; and it concluded with these words: "Sworn to and subscribed before me, October 1st, 1912. Mrs. M. E. Howland. Witness. A. S. West, N. P. Floyd Co., Ga." This paper was handed, on the afternoon prior to the day of sale, by the attorney for the mortgagor to a lady who was alleged to have charge of the affairs in the office of the sheriff of Floyd county, with the statement by the attorney to her, "Here is an affidavit of illegality to stop the sale of the Howland property." The paper was delivered to the sheriff, by

the lady referred to, sometime prior to the sale of the property. On the day the sale was advertised to take place, the sheriff "called up the attorney of plaintiff in fi. fa., and they together called over the telephone A. S. West, who had witnessed the said signature of Mrs. M. E. Howland, as aforesaid, and  .   .   West said to them that he had merely witnessed the paper, and that it was not sworn to before him." Neither the sheriff nor the attorney for the plaintiff in fi. fa. notified the mortgagor or her attorney that they had received this information from West, or, "that they would sell said property, or that they would not recognize the validity of said affidavit of illegality, or the legal sufficiency thereof." The property was sold as advertised by the sheriff, and brought the sum of $1,910, R. L. Morris being the purchaser, and the sheriff conveyed the property to him in pursuance of the sale. Subsequently the mortgagor brought an equitable petition against Morris and the sheriff, in which she alleged in substance the foregoing facts, and further: "that said property levied on was and is of the value of $8000.00, that the same is composed of a number of separate and distinct lots, and that the same can be easily divided into four lots worth approximately $2000.00 each;" also, "that said affidavit of illegality was properly witnessed and properly executed, and that when same was filed by your petitioner's attorney that both she and her attorney never questioned the fact but that it would stop the sale of said property, and for this reason failed to appear at the sale of said property or to be there, and as a result of their absence said property was sold at a grossly inadequate price, to wit, the sum of $1910.00, to R. L. Morris of Rome, Georgia;" and that "petitioner says that said action of the attorney for plaintiff in fi. fa., and said sheriff, in calling up said witness, A. S. West, and in keeping their information, and their further action in failing and refusing to notify either your petitioner or her counsel that said affidavit of illegality would not be accepted, and that said sale would be held on said first Tuesday in October, amounted to fraud. Petitioner further shows that said levy was grossly excessive, and that a levy on one of the lots constituting said property described in said mortgage and levied on as aforesaid would have been sufficient to have brought the amount of said mortgage fi. fa.;  .   . that said property was made up of four separate and distinct lots, either one of which was worth more than the sum of said mortgage

44

fi. fa., principal, interest, and cost, and that said levy on said property to satisfy said mortgage fi. fa. was grossly excessive and amounted to fraud. Petitioner shows that on account of said fraud, misrepresentation, irregularity, error, omission, and misapprehension of your petitioner and her attorney as to the time of sale, the said excessive levy as aforesaid, and the grossly inadequate price for which said property was bid in as aforesaid, constitutes such fraud and that said deed [from the sheriff to Morris] should be set aside." The prayer in the petition as amended was as follows: "Wherefore petitioner prays that said deed be canceled of record, and said sale be set aside and declared null, void, and of no effect, and that petitioner be placed in full possession of said premises." Process was prayed against Morris and the sheriff.

Each of the defendants demurred to the petition. The demurrers were sustained, and the petitioner excepted.

*C. I. Carey, Denny & Wright,* and *Graham Wright,* for plaintiff. *Maddox & Doyal* and *Harris & Harris,* for defendants.

FISH, C. J. (After stating the foregoing facts.) In their brief filed in this court counsel for plaintiff in error say: "The petition alleged, as grounds for setting aside this deed and sale, (1) that the levy was excessive; (2) that the price was grossly inadequate; and (3) that the defendant in fi. fa., before the sale of said property, filed with the sheriff's office an affidavit of illegality, which was accepted by the sheriff's office, and thereupon the defendant in fi. fa., naturally supposing that the said sale would be postponed until a hearing could be had upon this affidavit, went away from the place of sale, and that later the attorney for the Exchange Bank, without the knowledge of Mrs. Howland or her attorney, conferred with the sheriff and they thereupon made certain private investigations and finally set aside the illegality and sold the property without notifying or attempting to notify either Mrs. Howland or her attorney." We will deal with the points insisted on in the brief in the order there stated.

1. Was the levy excessive? Counsel contend in their brief that the mortgaged property was susceptible of subdivision, so as to sell a less quantity than the whole, and thereby raise a sum sufficient to satisfy the mortgage fi. fa.; and therefore that the sale of the entire property was not lawful and should be set aside. We will consider these two points in this division of the opinion. In

*Vickers* v. *Hawkins,* 111 *Ga.* 119, 120 (36 S. E. 463), it was said: "that an execution in rem against certain specific property·may properly be levied upon that property, and that the levy will not be void for excessiveness though the value of the property be far greater than the amount of the execution. We therefore think that where a tax execution is issued against a particular lot of land, commanding the levying officer to levy upon and sell that lot, a levy ·of the execution upon the entire lot is not excessive." This ruling was followed in *Wilkinson* v. *Holton,* 119 *Ga.* 557 (3), 558 (46 S. E. 620), where a security deed had been given by the debtor to his creditor and judgment obtained for the indebtedness, and an execution issued thereon had been levied on the entire land conveyed in the deed. In the case last cited it was said that "where the property is easily susceptible of division, it would be the duty of the sheriff to expose it for sale in parcels in such a ·way as to discharge the amount due on the executions with as little loss to the plaintiff in the present case as possible." It will, however, clearly appear from an examination of that case that what was said in respect of the sale, in parcels, of property levied on under the execution there involved, where it is susceptible of subdivision, was purely obiter. See also *Cooney* v. *City of Atlanta,* 136 *Ga.* 118 (3), 120 (70 S. E. 950), where·the fi. fa. apparently directed the marshal to sell so much of the property described as might be necessary ·to make the amount of an assessment for a local improvement, and the marshal, in his answer to a petition for injunction, disclaimed any intention to sell in bulk rather than in parcels. Without discussing what may be the rule in cases of executions in rem for taxes or for assessments for local improvements, we know of no case, where the question was in issue, holding that where a mortgage execution has been levied on the entire property described in the mortgage, judgment of foreclosure, and execution, it must be sold in parcels when susceptible of subdivision. In other cases cited by counsel for plaintiff in error, the executions there involved were not against specific property, but were against the defendants generally. In *Reeves* v. *Bolles,* 95 *Ga.* 402 (22 S. E. 626), a borrower of money secured the same by a deed to a large tract of land to the lender, judgment was obtained for the money loaned, and execution was levied upon the entire tract of land. The defendant in fi. fa., and certain persons

as his judgment creditors, filed an equitable petition to enjoin the sale, and prayed that the land be surveyed, platted, and sold in separate parcels. The petitioners alleged that if the land should be sold in one entire tract, it would bring a much less sum than if the same were sold in parcels, and would therefore be sacrificed unless the defendants were enjoined from making the sale as advertised, that is, to be sold in gross. The trial judge refused to grant the injunction, and upon a writ of error to this court his judgment was affirmed. There was a conflict in the evidence submitted, as to whether or not the land would sell to better advantage if divided up into parcels than it would if sold as one entire tract. In the opinion, pronounced by Mr. Justice Samuel Lumpkin in behalf of the court, it was said: "This [conflict in the evidence], of itself, would be a sufficient reason for declining to interfere with the discretion of the trial judge in refusing by injunction to arrest the progress of the defendant's execution." The decision, however, was not left to stand on this ground alone, for it was said: "Granting, however, for the sake of the argument, that a larger amount would be realized by selling the plaintiff's land in separate tracts, we are still of the opinion that the judge was right in denying the injunction. It may be within the power of a court of equity, in some cases, to decree that the property of a debtor shall be sold in parcels, and not as a whole, where it manifestly appears that gross injustice would result if the latter course were pursued. We are entirely satisfied, however, that the case in hand is not one of this kind. The plaintiff, Reeves, borrowed money, gave his note for the same, and for the purpose of securing its repayment executed a deed conveying the entire body of land in controversy. This gave to the lender an absolute legal right to enforce the collection of any judgment he might obtain upon the note by a sale of the land as one entire tract; . . The land in its entirety being specifically pledged for the payment of the debt, it must inevitably have been within the contemplation of the parties that if it should become necessary to enforce payment by resort to legal proceedings, the land would be subject to sale as a whole, just as it was conveyed. It is not denied that the plaintiff in execution has a perfect legal right to have all the land sold to satisfy his judgment; and to have granted the injunction sought would necessarily have been to interfere, to some extent, with the exercise of

this right." A judgment of foreclosure of a mortgage on realty is in the nature of a judgment in rem. "It is a judgment to enforce a specific lien, created by agreement of the parties. It is not alone a judgment as to the amount due on the mortgage, but is also a judgment that the property mortgaged shall be sold to pay the sum adjudged' to be due." In pursuance of the judgment of foreclosure an execution is issued "commanding the officer to levy upon and sell the property, naming it specifically. . . What right of judgment or discretion has he? His duty is to levy the process, and the process commands him to levy upon and sell the property, designating it by full description. He is not directed to raise money, as in case of a general judgment, out of the property of the defendant, but to raise it out of the property named." *Wallace* v. *Holly,* 13 *Ga.* 389, 393, 394 (58 Am. D. 518). That it is not the duty of an officer making a sale of land in pursuance of a mortgage foreclosure to divide the land into parcels in making the sale, where the land is described in the mortgage and judgment of foreclosure as a single tract, see Patton v. Smith, 113 Ill. 499; Shannon v. Hay, 106 Ind. 589 (7 N. E. 376); Geuda Springs Town & Water Co. v. Lombard, 57 Kan. 625 (47 Pac. 532).; Cochran v. Goodell, 131 Mass. 464. In the case at bar the property, as appears from the petition, was described in the mortgage, the judgment of foreclosure, the execution, the entry of levy, and the sheriff's advertisement of sale, as "all that tract or parcel of land situated, lying, and being in a part of the strip of land lying on the South bank of the Etowah river in the Fifth ward of the City of Rome, Floyd County, Ga., known as the 'Toll House and Lot,'" the tract being further described by boundaries and distances. We are clear from what has been said that the levy was not excessive nor the sale void because the property was not subdivided and sold in parcels.

2. We are equally convinced that the sale was not void on account of inadequacy of price. Inadequacy of consideration, even if it be gross, is not per se sufficient cause to set aside a sheriff's sale, though it may be a strong circumstance to show fraud. *Parker* v. *Glenn,* 72 *Ga.* 637; Civil Code, § 4129. "While inadequacy of price at a sheriff's sale will not, of itself, be a sufficient ground to set aside the sale, yet when it is grossly inadequate and is connected with fraud, mistake, misapprehension, surprise, or other circum-

stances which tend to bring about such inadequacy to the injury of parties interested, the sale will be set aside·by a court of equity." *Smith* v. *Georgia Loan & Trust Co.,* 114 *Ga.* 189 (39 S. E. 846). If the price were grossly inadequate in the present case, there were no circumstances connecting it with any fraud, mistake, misapprehension, or surprise, bringing about such inadequacy, as to authorize the setting aside of the sale. As already shown, the levy upon and the sale of the entire tract were lawful, and, as will later be made to appear, the other circumstances relied upon to indicate fraud were not sufficient for that purpose. "This court in 11 *Ga.,* 427, adopts the rule in 4 Wheaton, 503, and makes the purchaser bound to look to the judgment, the levy and deed, and at sheriff's sales requiring him to notice only these. Caveat emptor is not to be applied to him in any other conduct of the officer or other authority to sell and convey." *Overby* v. *Hart,* 68 *Ga.* 493, 496; *Parker* v. *Glenn,* 72 *Ga.* 637 (2a). In *Wilson* v. *Boyd,* 84 *Ga.* 34 (10 S. E. 499), it was said that if the sheriff sold lawfully, it could not be a fraud for the purchaser to buy, although he paid a small price. "If he was the highest and best bidder at a fair and lawful sale, he was entitled to the benefit of his purchase, no matter how little it cost him." In *Boyd* v. *Wilson,* 86 *Ga.* 379 (12 S. E. 744, 13 S. E. 428), it was held: "A purchaser at a tax sale duly made under a legal levy, who is neither implicated in nor aware of any fraud contemplated by the selling officer, is not affected thereby." In the instant case there was nothing tending to show that Morris, the purchaser of the property at the sheriff's sale, had any knowledge or notice of any irregularity or fault on the part of the sheriff or the plaintiff in execution (the bank) or its attorney, even if anything of that character existed.

3. Was the sale void for the reason that the sheriff made it after the paper purporting to be an affidavit of illegality had come into his hands? We have no difficulty in reaching the conclusion that it was not. An affidavit of illegality must, of course, be sworn to; otherwise it would not be an affidavit. Civil Code, § 5305. The paper purporting to be an affidavit of illegality, which was lodged in the sheriff's office the afternoon prior to the sheriff's sale of the property, was unusual in form. In the beginning it stated: "In person before me came the defendant in the above-stated case, who being duly sworn says under oath," etc. But the jurat, while in the

ordinary form, was followed by the word "Witness," under which was the name of a notary public. Mrs. Howland's name was signed to the paper. The word "Witness" following the jurat probably attracted the attention of the sheriff and caused him and the attorney for the plaintiff in fi. fa. to call up the notary, who apparently had merely witnessed the paper, and to inquire of him whether he had administered an oath to the defendant in fi. fa. The notary replied, no, that he had merely witnessed the defendant's signature. This all appears from the petition, in which it was nowhere alleged clearly and expressly that the defendant had sworn to the purported affidavit of illegality. It is true the petition alleged "that said affidavit of illegality was properly witnessed and properly executed," but the allegation that it was properly executed partakes more of the nature of a conclusion of the pleader than an unequivocal statement of a fact. Such equivocal allegation was allowed to stand by the pleader, in the face of a special demurrer that the petition did not allege that Mrs. Howland "ever made oath to said alleged affidavit of illegality." Certainly it was within the knowledge of Mrs. Howland and her attorney whether she had made oath as to the truth of the contents of the paper. It did not appear from the petition that the sheriff ever accepted the paper as an affidavit of illegality, nor did he do or say anything which tended to induce Mrs. Howland or her attorney to believe that he would accept it. Her attorney, on the afternoon before the day of sale, merely handed the paper to the lady who was alleged to have charge of the affairs of the sheriff in his office, with the statement, "Here is an affidavit of illegality to stop the sale of the Howland property," and this was followed by the allegation that the lady turned the paper over to the sheriff sometime prior to the sale. Ordinary diligence, we think, required Mrs. Howland or her attorney to ascertain from the sheriff whether he would accept the paper as an affidavit of illegality and stop the sale. So far as the petition shows, neither of them communicated with the sheriff in reference to the matter, nor was either of them present during sale hours to see whether or not the sale would be made. Moreover, there was no hint in the petition that Morris, the purchaser at the sale, had any knowledge or notice in reference to the paper purporting to be an affidavit of illegality.

In view of all these circumstances we have no hesitancy in holding that the sale should not be declared void, and that there was no error in sustaining the demurrer to the petition.

*Judgment affirmed.    All the Justices concur.*