## SUTTLES *v.* SEWELL *et al.*

| | |
|---|---|
| 109 | 707 |
| †109 | 805 |
| 109 | 707 |
| ⸬117 | 214 |
| 109 | 707 |
| 128 | 823 |

1. If a purchaser at a sheriff's sale does not comply with the terms of his bid, the officer may, under proper conditions, resell on the same day within the lawful hours of sale, the more especially after giving, in advance, notice of an intention so to do in the event of failure by the successful bidder to make payment by a designated hour ; but where, in such a case, the second sale took place after the dispersal of the crowd in attendance upon the first and just before the close of sale hours, when there was little or no competition, and the plaintiff in execution became the purchaser at a price which was not only far less than that brought at the previous sale but so grossly inadequate as to shock even the average man's sense of justice and fairness, the second sale should be treated as void and the property should be readvertised and sold again.

2. One who, with knowledge of the facts, becomes the transferee of the bid made by the purchaser at a sale of the character last indicated, and who by virtue of such transfer and the payment of the amount of the bid acquires a deed from the sheriff, occupies no better footing as to title than such purchaser would have done if the sheriff had conveyed to him.

3. The present case should not have been disposed of by a judgment of nonsuit.

Argued December 15, 1899.— Decided January 30, 1900.

Equitable petition.    Before Judge Lumpkin.    Fulton supe-
rior court.    March term, 1899.

*R. B. Blackburn*, for plaintiff.

*Simmons & Corrigan* and *Oscar Parker*, for defendants.

LUMPKIN, P. J.    On the first Tuesday in January, 1897,
certain realty belonging to Mrs. Suttles was by the sheriff ex-
posed to sale before the court-house door of Fulton county un-
der an execution in favor of Mrs. Powell.    It was knocked off
to Gammage at the price of $3,605.    He did not comply with
the terms of his bid, and the property was resold on the same
day to Mrs. Powell for $1,300, a bid in her behalf for this
amount having been made by C. J. Simmons as her attorney.
Subsequently Gammage filed an equitable petition, whereby he
sought to enjoin the sheriff from conveying the land to the
second purchaser, and to compel the execution of a sheriff's deed
to himself.    This court, in 101 *Ga.* 540, affirmed a judgment
denying an interlocutory injunction upon his petition.    Mrs.
Powell's bid was transferred to Sewell, and the sheriff conveyed
the property to him.    In *Suttles* v. *Sewell*, 105 *Ga.* 129, this
court also affirmed a judgment directing the sheriff to put the
latter in possession of the property.    At that time the present
case, which is an action by Mrs. Suttles to set aside the sheriff's
deed to Sewell, was pending; but as the issues therein involved
were not passed upon or adjudicated in the proceeding insti-
tuted by Sewell against Mrs. Suttles to obtain possession, it was
in the volume last cited expressly ruled that our judgment in
the case therein disposed of would not conclude Mrs. Suttles
as to the questions at issue in the case now before us.    See re-
marks of Mr. Justice Cobb as to this matter on pages 133 and
134.    This much of preliminary history seems to be an essen-
tial preface to the discussion which follows.

1. Mrs. Suttles excepts to a judgment in the nature of an or-
der of nonsuit, whereby it was in the court below adjudged that
she failed to make out a prima facie case entitling her to a can-
cellation of the sheriff's deed to Sewell.    We will not here re-
capitulate the evidence, but will refer to its salient features as
we proceed.    Taking it as a whole and giving to the plaintiff

the benefit of the inferences therefrom most favorable to her con-. tentions, which is the proper course in dealing with a judgment of nonsuit, the jury would have been authorized to find substantially such a state of facts as those outlined in the first headnote, and that Sewell had knowledge thereof when he took the assignment of Mrs. Powell's bid and the sheriff's deed. We do not mean to say that a finding of this kind was demanded, but merely to assert that it would have been warranted. Upon the assumption that such a state of facts existed, was the second sale a valid and lawful disposition of the plaintiff's property?

This court, in *Humphrey* v. *McGill*, 59 *Ga.* 649, held that, upon failure of a purchaser to comply with his bid, the sheriff might, without readvertisement, sell again, within legal hours, on the same day. It has never, however, held that a resale would be upheld merely because it took place during the lawful hours of sale, if it was not in other respects properly and fairly conducted. In *Sanders* v. *Bell*, 56 *Ga.* 443, Judge Jackson, referring to an administrator's sale, said: "If the bidder, on the day of sale, refuses to comply before the crowd disperses and the hours of sale terminate, that day is the proper time to resell; if that can not be done, just so soon as the property can be readvertised after notice of refusal to comply with the terms of sale." Unquestionably this view, if correct, is good law in the case of a sheriff's sale. It is true that in the case cited there was no question as to the validity of a resale made on the same day on which there had been a failure to consummate the first sale. The language quoted from Judge Jackson was used in arguing the proposition that a resale at the first purchaser's risk should be "as soon as it can reasonably be done," but what he says commends itself to our minds as sound doctrine. Indeed, it seems that this eminent jurist instinctively apprehended the true law which should control our present question. "Before the crowd disperses and the hours of sale terminate." A commentary embraced within a phrase. What is the meaning of it? Why, that the second sale should not only take place within the legal hours, but that it should be a fair one—that it should not occur under circumstances necessarily involving a sacrifice of the property—that it should have not merely the form, but

SUTTLES *v.* SEWELL.

the substance, of a bona fide sale, with reasonable opportunity for competition. And is not this consistent with common honesty and fair dealing? A month's delay would ordinarily work no great damage to the plaintiff in execution. A sale without bidders might ruin the judgment debtor. There was evidence in this case tending to show that the property was worth from $5,000 to $6,000. At the first sale, it was knocked off at $3,605. At the last, the plaintiff in execution, if the transaction stands, got it for $1,300. While mere inadequacy of consideration would not avoid the sale, such gross inadequacy as this ought to do so if the sale was for any other good reason impeachable. See 12 Am. & Eng. Enc. L. 237, 238. In *Parker* v. *Glenn*, 72 *Ga.* 637, this court, in dealing with a bill to set aside a sheriff's sale, held: "Inadequacy of price is not sufficient per se to set aside a sale, unless it is so gross as, when combined with other circumstances, to amount to fraud; but if it be great, it is of itself a strong circumstance to evidence fraud, and this is true where it is attended by any other fact showing the transaction to be unfair or unjust, or against good conscience." Indeed, it has been said to be "the duty of all courts, when satisfied that sales made under their process are affected with fraud, irregularity or error, wilful disregard of the statutory regulations by the officer, whereby the rights of either of the parties interested are seriously affected, to set aside such sale upon a proper showing to the court under whose process the sale was made, and order a resale of the property." Herman on Executions, § 249. The above is quoted in 12 Am. & Eng. Enc. L. 235, and in a note, followed by numerous citations, it is said: "This statement of the rule serves to indicate generally the *power*, if not the *duty*, of the courts, and is supported in its general scope by the authorities cited by Mr. Herman." In *Johnson* v. *Dooly*, 72 *Ga.* 301, also a case relating to a sheriff's sale, Mr. Justice Hall, speaking for this court, said: "It is laid down generally that the court upon whose judgment the execution issues has full power to set aside an execution sale whenever the ends of justice and fair dealing require it, and to order a resale, or award execution anew, at discretion." This statement of the law is taken verbatim from the text in Rorer on Judicial Sales, § 1081,

and the substance of it now appears in section 5427 of our Civil Code.

The sale now under review occurred but a few minutes before the sale hours expired; and if the property was really worth several thousand dollars, it is evident that the plaintiff in error had no competition. At the morning sale, when bidders were on the ground, some one must have run up the land to about $3,600, for the last bid was $3,605, and presumably the next to the last was but a little less. A recital of such facts shocks even the average man's sense of justice and fairness. There was also evidence to the following effect: The husband of Mrs. Suttles, acting as her agent, and Gammage, representing himself, were in the office of the sheriff shortly after three o'clock, endeavoring to arrange for a consummation of the sale to Gammage, the purpose of Suttles being to prevent a resale, so as to secure for his wife the benefit of the price of $3,605, and that of Gammage being to obtain the property. He was seeking an extension of time for payment. The sheriff agreed to do anything to which Simmons, representing Mrs. Powell, would agree; and the latter was summoned by telephone. Suttles left the office and was absent about ten minutes, the sheriff promising to wait till he came back before making another sale. Gammage, during this interval, was in the sheriff's outer-office. About the time Suttles returned, Simmons and Thomas, a deputy-sheriff, entered the office, and the announcement was then made that the latter had sold the property to Simmons. Neither Suttles nor Gammage was present at the second sale nor expecting it to occur, but were anticipating further negotiations with Simmons, as stated. All this should have been weighed and passed upon by the jury. Granting that there was no moral or intentional fraud, the evidence, interpreted most favorably for the plaintiff, makes a case of legal fraud. See second headnote in *Johnson* v. *Dooly*, 72 *Ga.* 297, cited supra, laying down the proposition that "The fraud which avoids a sale may be legal as well as moral." And, under this evidence, could not the jury have found that it was at least an "irregularity" to expose this valuable property for sale almost at the end of the sale day, with no one present to bid for it except the

attorney of the plaintiff in execution, and he in a position to bid any desired amount not exceeding that of the fi. fa., which was considerably more than $3,000, without being called upon to produce a dollar for aught save the costs and expenses of the sale? We must not be understood as saying these are the actual facts of the transaction, for we are merely putting the case as the jury might have viewed it. We recognize that the position of the defendant in error is much strengthened by the fact, appearing in the evidence, that the sheriff announced at the first sale an intention to resell if the successful bidder thereat did not pay for the land by 3 o'clock p.m. It was perfectly proper for the sheriff to make such an announcement, but we do not think the fact that he did so is of itself sufficient to prevent the jury from passing upon the plaintiff's case in its entirety, of course giving to the circumstance just mentioned its proper weight.

One other point on this branch of the case requires notice at our hands. It was urged for the defendant in error that the evidence showed that Gammage, who was a brother of Mrs. Suttles, was not a bona fide bidder, and that his conduct at the sale was simply the result of a conspiracy between the two to prevent any sale at all on that day. If the evidence demanded a finding to this effect, it would of course follow that Mrs. Suttles would have no right to invoke equitable aid to relieve her from loss incurred by the sacrifice of her property which she thus contributed to bring about. But we can not say that the evidence did so demand. This question, like all the others in the case, should be passed upon and determined by a jury.

2. If Sewell took the assignment of the bid and the sheriff's deed thereunder with knowledge of the facts as they are claimed to be by Mrs. Suttles, and if under those facts the sale to Mrs. Powell was void, it requires no argument to show that he is in no better position than she would have been had the sheriff conveyed to her. As to how he would stand if he took innocently and in good faith, we are not now called upon to decide, as no question of this kind was made in the record or presented in the briefs.

3. The court erred in granting the nonsuit.    Let the case in all its bearings be submitted to a jury.

*Judgment reversed.    All the Justices concurring.*