## HAUNSON *v.* NELMS *et al.*

Where an execution was levied upon property of the defendant in execution, and he filed an affidavit of illegality thereto, and was, on the day of sale, informed by the sheriff that the latter had accepted the illegality and that the property would not be sold on that day; and where the defendant and his counsel thereupon left the place of sale; and where subsequently the sheriff reconsidered and determined to sell the property on that day,

and at noon notice was given to the defendant's counsel, who sought to find his client but was unable to do so; and where at three o'clock counsel for the defendant and for the plaintiff and two other persons appeared at the place of sale and the property was sold to the plaintiff in execution for $100, when its true value was $2,000: *held*, that the sale should be set aside on application of the defendant in execution, although his attorney gave notice at the time of the sale of the pendency of an application for homestead upon the property.

Argued December 19, 1899. — Decided January 31, 1900.

Petition for injunction. Before Judge Lumpkin. Fulton county. June 8, 1899.

*R. J. Jordan*, for plaintiff.

*J. E. Wooten* and *Culberson & Willingham*, for defendants.

SIMMONS, C. J. Haunson borrowed of Leitch $3,000, and to secure the same gave a mortgage upon certain real estate. Default in payment having been made, the mortgage was foreclosed and execution issued. Haunson made application for homestead on a portion of the mortgaged property, and this application was resisted by Leitch on the ground that Haunson had by the terms of the mortgage waived his right to homestead as against the debt to Leitch. The sheriff levied the mortgage execution upon the property, and made regular advertisement of the sale. Haunson filed an affidavit of illegality on the day prior to sale day. The sheriff accepted the illegality, and on the morning of the next day, at a time when a "very large number of people" were present, informed Haunson that "the property would not be sold, that the sale had been marked off." Counsel for Haunson was present on the same day where the sheriff was selling property, and inquired if the property of Haunson would be sold. He was informed by the sheriff "that it would not be sold, that it had been marked off." About noon of the same day Haunson's counsel was notified that the sheriff would not accept the illegality filed by Haunson, but would sell the property at three o'clock of that day. Haunson, after he had been told that his property would not be sold, left the court-house and could not be found or reached by his counsel before three o'clock, the hour thus fixed for the sale. At that hour the attorney for Haun-

son, in company with another attorney, went to the court-house to attend the sale, and gave notice of the pending application for homestead.    Besides the sheriff there were but four persons present, and the property, worth $2,000, was bid in for $100 by one of Leitch's attorneys, who was the only bidder and who bid for his client.    Haunson filed an equitable petition against the sheriff and the purchaser, Leitch, asking that the sale be set aside and that the defendants be restrained from taking possession of the property.    The petition recited substantially the facts set out above, and the evidence established them without contradiction, and showed that Leitch's counsel had, at the time he bid in the property, full knowledge of them.    The relief prayed was denied by the court below, and the petitioner excepted.    The contention of the plaintiff in error, that the sheriff should not have proceeded after the filing of the affidavit of illegality, is, we think, not sound, as the affidavit was itself without merit.    On the other hand, we can not agree with counsel for defendant in error that the case should be affirmed on the ground that the court was without jurisdiction to determine this case, for the reason that Leitch was a non-resident of the county wherein the petition was filed.    The question of jurisdiction was argued here, but, inasmuch as the record does not show that any plea to the jurisdiction or any special demurrer on this ground was filed, and does show that the non-resident appeared and answered, this court will presume that he waived the want of jurisdiction.

The sole question to be decided is, therefore, whether the sale, made under the circumstances above recited, was a valid and legal one.    We think that it was not.    Misleading the defendant in execution and preventing his attendance at the sale by informing him that the property would not be sold that day and that the sale had been "marked off," postponing the sale from the earlier hours of sale when a large number of people were assembled to a time later in the day when there were but four persons present and two of these were the attorneys of the parties, and selling the property for an amount much smaller than it was worth, are certainly sufficient to show beyond doubt that the sale was affected with irregularity if not with fraud,

and that the defendant was thereby injured. The purchaser at the sale was the attorney for the plaintiff in execution, who bid in the property for his client, and who had full knowledge of all the facts. He was not an innocent purchaser, and the sale should have been set aside. This case is controlled by the decision in the case of *Suttles* v. *Sewell*, 109 *Ga.* 707, and is a stronger case even than that. We of course realize that the announcement, made by the attorney for Haunson, that the property was sold subject to a pending application for homestead may have had much to do with the inadequacy of the price for which the property was sold. The pendency of a homestead application would ordinarily make property bring less at a sale, but even this can scarcely account for the gross inadequacy here. Besides, the circumstances of the sale were such as to make it void aside from that consideration. The mere fact that a sheriff sells "at public outcry" when, in addition to the parties' attorneys, there are but two persons present, is sufficient to raise a suspicion of fraud; and when it further appears that the sale was made at three o'clock in the afternoon after the defendant in execution had been sent away with the assurance that his illegality had been accepted and that his property would not be sold that day, we think that the sale should be set aside, when the property was bid in by one who had full knowledge of all these facts. See *Suttles* v. *Sewell*, supra, and authorities cited; Pell *v.* Vreeland, 35 N. J. Eq. 22; King *v.* Platt, 37 N. Y. 155; American Wine Co. *v.* Scholer, 85 Mo. 496; Johnson *v.* Crawl, 55 Tex. 571; Hughes *v.* Duncan, 60 Tex. 72; Roberts *v.* Roberts, 13 Gratt. 639; 2 Freeman, Executions (2d ed.), § 308.

　　　*Judgment reversed. All the Justices concurring.*