## SIKES *v.* SIKES, administrator, *et al.*

1. Where an administrator obtained an order and sold lands belonging to his intestate's estate, after due advertisement, between the hours of 10 o'clock and 11 o'clock a. m., and one of the successful bidders at the sale failed to comply with the terms of the sale by paying cash for the land purchased by 1 o'clock p. m.; and where the administrator notified such person only at about the last-named hour that the land would be resold on the same day at her risk; and where, after the crowd attending the sale had dispersed for the day, and without further notice to the public, the land bid off in the morning by the purchaser who failed to comply with her bid was again put up for sale by the administrator at or about 4 o'clock p. m., when it was bid off by the unsuccessful bidder of the morning, who was a brother of the administrator, at about half the sum bid by him for the same land in the morning, and the successful bidder of the morning was not allowed to bid by the attorney for the administrator crying the bid, at the last sale, such last sale is void, and should be set aside.

2. Generally a charge by the court to the jury must be authorized by the evidence; and where a charge, though abstractly correct, is given which is not so authorized and which is calculated to confuse and mislead the jury, such charge will generally require a new trial. The charge complained of and set out in the second division of the opinion was not authorized by the evidence.

No. 2827. JULY 11, 1922.

Equitable petition. Before Judge Eve. Worth superior court. August 29, 1921.

Mrs. Clara O. Sikes brought a petition against J. B. Sikes as administrator of the estate of B. F. Sikes, deceased, William F. Sikes, James B. Sikes, and Joseph E. Sikes, for injunction, receiver, and cancellation of certain deeds, etc. The petition alleged substantially the following: Benjamin F. Sikes died on March 28, 1916, intestate, leaving an estate consisting of certain real and personal property located in Worth and Tift counties. The deceased left surviving him as his heirs at law the plaintiff as his widow, and William F., James B., and Joseph E. Sikes, his sons by a former marriage, all of whom have attained their majority, and Robert Lee Fulton Sikes, the only child of the marriage of the deceased and the plaintiff. James B. Sikes was appointed administrator on the estate of Benjamin F. Sikes on September 4, 1916, qualified as such, and took possession of his entire estate for the purpose of administration; and he has since held the same, receiving the rents and profits therefrom. The realty of which the deceased died seized and possessed is embraced in nine different tracts particularly described in the petition.

These various tracts have been rented, and the rents received by the administrator during the years 1916, 1917, and 1918, for certain amounts annually, which it is unnecessary to set out. The administrator obtained an order from the court of ordinary, authorizing him to sell the lands belonging to the estate; he advertised them for sale, and on the first Tuesday in November, 1918, caused them to be offered for sale; and though there was quite a gathering of people present at the time of the sale, it was conducted in such a way as to make it appear to bystanders and prospective bidders that it was more for the purpose of division than for actual sale; and when plaintiff approached the place of sale, two or three of the tracts had already been knocked off to Joseph E. Sikes, the brother of the administrator, and one of the heirs, at prices far below the actual value. Plaintiff, realizing that it was necessary that she make such effort as lay in her power to protect herself and her minor son, for whom she was guardian, against the manifest effort on the part of the three Sikes brothers to make the sale a fictitious or sham sale for the purpose of acquiring titles to these lands at a mere nominal price and thereby shut out plaintiff and her minor son and deprive them of the greater part of it, if not almost wholly of their just share in the estate, entered actively into the bidding and undertook to offer such prices as in her judgment were fair and reasonable and such as these lands would readily have brought in the open market upon full, fair, and open sale. The sale was conducted by the attorney at law of the administrator, and there was no one bidding other than Joseph E. Sikes, though the other two brothers, besides the administrator, were all present. There was no effort on the part of the administrator or W. F. Sikes to make the bidding competitive or to solicit bids from any of the bystanders; but there was a manifest willingness on the part of all three of the brothers to let Joseph E. Sikes bid in all of the property at his own uncontested bid, and the lands were rapidly knocked off to him, tract after tract, at the time plaintiff came up and entered into the bidding. No one offered any bid other than Joseph E. Sikes and plaintiff, except one party who offered a bid of $25 per acre for the Tift county land. These lands are all well located and desirable; and had the sale been conducted in such manner as to invite outside and competitive bidding, and as to impress the general public of the bona

fides of the sale, the lands would have brought much higher values than they did. At this sale prior to the time plaintiff came up, the following tracts of land had already been knocked off to Joseph E. Sikes, he being the only bidder therefor, to wit: tract No. 4 at $105, when the same was worth in the open market the sum of $300; tract No. 5 at $5 per acre, when the same is well worth $40 per acre; tract No. 7 at $5 per acre, though the same is well worth $40 per acre; tract No. 8 at $5 per acre, though the same is well worth $40 per acre. Plaintiff bid off tracts of land Nos. 1, 2, 3, and 9 in good faith and at such prices as she considered fair and reasonable under the existing facts and circumstances, believing that the administrator would be fair and just enough to allow her to set off her interest in the estate as far as it would go towards the purchase-price bid by her, and give her a reasonable time in which to pay the balance in money, it being her purpose and intention to do so, and even to raise the entire amount of purchase-money if made necessary to do so by the administrator, she being ready and willing to raise the same, and she repeatedly informed the administrator and his attorney at law of the fact within a reasonable time and place within the current month and before the property could be readvertised and sold; but the administrator demanded of her immediate payment of the full amount of her bids for the amount knocked off to her, and stated to her privately that he would resell the lands on the same day unless she made such compliance with her bids then and there, declining to allow or take into consideration the amount of her share of the proceeds of these properties as against any or all of them, and declining her request for a reasonable time within which to comply with her bid. On the same day and after 4 o'clock in the afternoon, and long after the crowd had dispersed, and at a time when there were no outside bidders present, there being but one or two persons other than the three Sikes brothers, the attorney for the administrator, and the plaintiff, and perhaps one or two court officials and casual lookers-on, the administrator, in pursuance of his evident plan and scheme (being confederated with his brothers) to shut out and deprive plaintiff and her minor son of their just and fair shares in the estate, did have said attorney to again offer for sale and cry off the tracts of land previously knocked off to the plaintiff. At this resale none of the tracts knocked off to Joseph

E. Sikes was again offered; and the administrator did not withdraw from the sale, as was his duty on account of the gross inadequacy in price, any of the lands so knocked off to Joseph E. Sikes. The four tracts previously knocked off to plaintiff were then, under the conditions stated, again put up for sale; and plaintiff, being present on account of the private notice and threat of the administrator to resell the same, again offered to bid on these tracts, and did bid several times against the very low bids of Joseph E. Sikes, who alone was bidding on the property, still pursuing her effort to protect herself and her minor son as best she could; but the administrator's attorney who was crying off the property and calling the bids offered by Joseph E. Sikes, realizing that her continued bidding would force Joseph E. Sikes to pay something like a fair and reasonable price for these properties, stopped crying the bids, turned to plaintiff, and demanded of her to know if she had the money then and there to comply with bids, and commanded her to stop bidding unless she had the actual money then and there to comply with her bids promptly; finally remarking, " If you haven't got the money, don't bid any more," his manner and conduct being such as to intimidate her and to suppress any effort on her part, she being made to believe that she had no further right to bid unless she had the actual money with her at the time. The result of this last sale and the circumstances and manner under which it was conducted was that tract No. 3, the one on which plaintiff was making an effort to bid at the time she was suppressed, was knocked off to Joseph E. Sikes at the price of $40 per acre, the same being less than half its actual worth and less than half of what Joseph E. Sikes had bid on this particular tract in competition with plaintiff at the time it was first offered in the morning. The tracts Nos. 1 and 2 were knocked off to Joseph E. Sikes at his only bid, the same being less than one tenth of what he had previously bid for these tracts when they were previously offered on this same date and when in competition with plaintiff, and one tenth of the actual value of these properties. Tract No. 9 was knocked off to Joseph E. Sikes at the insignificant price of $4 per acre, this being less than one seventh the amount he had offered and bid for it in competition with plaintiff at the time it was previously offered on the same date, and less than one seventh of its actual value. In pursuance of the pre-

tended sales and on the same date, the administrator, though he had full knowledge of the facts that the bids of his brother, Joseph E. Sikes, to whom these lands had been knocked off, were grossly inadequate, executed and delivered to Joseph E. Sikes five deeds purporting to convey to him these lands; copies of which deeds were attached to the petition. In the application to the court of ordinary for an order to sell the lands the administrator alleged that it was necessary that they be sold for the purpose of paying the debts of the estate and for distribution; and plaintiff alleges and charges that these allegations were falsely made by the administrator as a part of the fraudulent plan and scheme in which he and his two brothers conspired and confederated to procure and get · control and appropriate to their own use the lands belonging to the estate, and thereby take from plaintiff and her minor son the greater part and portion, and almost wholly, their shares in the estate. It is not true that there were debts against the estate at the time the application was made, so far as plaintiff knows or has been able to determine; and she alleges that there were none. These lands could have been easily divided in kind among the five heirs of the estate, and it would have been to the interest of the heirs, and especially of plaintiff and her minor son, to have divided them; and these facts were well known to the administrator and his two brothers acting with him. The administrator, in violation of his duty to withdraw the lands and not permit them to be sold, and in pursuance of the fraudulent plan into which he entered with his two brothers, has turned over these lands into the possession and control of his brother, Joseph E. Sikes; and unless restrained by the court, they will undertake to dispose of the lands in such way as to avoid their proper administration, etc. It is prayed: that the court take possession of these lands through a competent and impartial receiver; that the assets of the estate be marshaled; that the receiver be called upon to give a full accounting to the representative of the court; that final administration be had under the direction of the court; that the deeds conveying these lands, now held by Joseph E. Sikes, be canceled and declared null and void, thereby removing them as a cloud upon plaintiff's title; that the defendants be enjoined from taking charge, possession, or control of the properties, and from in any way disposing of them or incumbering them or interfering with them; and that they be re-

quired to surrender the deeds and other evidences of title they may hold under these deeds, and that the same be adjudged to be void and canceled; that in the course of administration these lands be divided in kind, as provided by statute in such cases; and that general relief be granted.

The administrator, after having answered generally and jointly with the other defendants, made a special answer in which he set out at length his acts and doings as administrator, averring that he had carefully and economically managed the estate in accordance with law, etc. All the defendants answered the petition, admitting some of the allegations and denying others; and all praying that each and every prayer of plaintiff be denied, and that defendants have judgment against plaintiff for their proper costs.

On the trial of the case a verdict was rendered by the jury for the defendants. A motion for new trial was made on various grounds, which was overruled, and the plaintiff excepted.

*Perry & Tipton,* for plaintiff.

*Richard B. Bentley* and *Smith & Christian,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. In the view we take of this case the judgment should be reversed, because the verdict finding for the defendants was contrary to law. That is to say, we are of the opinion that the sale held in the afternoon of the same day on which a part of the property had been knocked off to the plaintiff was void. The Civil Code, § 4022, provides: "All sales by administrators (except of annual crops sent off to market, and of vacant lands) shall be at public outcry between the hours of 10 o'clock a. m. and 4 o'clock p. m; nor shall any sale be continued from day to day, unless so advertised. Good faith is required of the administrator in all cases, that the property be sold in such manner and quantities as shall be deemed most advantageous to the estate." The evidence is conflicting as to whether the sale in the afternoon took place prior to or subsequently to the hour of 4 o'clock. The plaintiff testified that the sale in the afternoon did not commence until after 4 o'clock. The administrator, and other of his witnesses, on the other hand, testified that it was before 4 o'clock. The jury were therefore authorized to find that the sale in the afternoon took place within the legal hours of sale. But we place our de-

cision of a reversal of the judgment of the court below upon the fact that no notice of any kind was given to the public before the crowd assembled in the morning, or afterwards and before they dispersed, that there would be another sale during the day. The second sale was not announced until just immediately before or at 4 o'clock; and we are of the opinion that after the crowd had dispersed and no notice had been given of another sale, and when, according to the evidence, very few, if any, persons, outside those who were directly interested in the estate, were present, the sale was void. *Suttles* v. *Sewell,* 109 *Ga.* 707 (35 S. E. 224).

Inadequacy of price alone is not sufficient to void a sale without fraud; and unless the inadequacy is so gross as, combined with other circumstances, to amount to a fraud, a sale can not be held to be void. Civil Code (1910), § 4129; *Black* v. *Elrod,* 146 *Ga.* 692 (92 S. E. 62). But, taking into consideration all the "other circumstances" of this case,— the facts that the crowd had practically all dispersed, that the sale was conducted by the attorney of the administrator, that the purchaser at the same was the brother of the administrator, who was bidding in competition with the plaintiff, that the land in the afternoon, when the crowd had dispersed, brought only about half of what was bid for it in the morning by the same purchaser, and that the land was put up for sale the last time about, if not after, 4 o'clock,— taking all these circumstances together, and the other fact, as appears from the record, that the defendants expressed a purpose to resell this land at the risk of the plaintiff, we are of the opinion that a new trial should be granted in this case.

In the case of *Smith* v. *Ga. Loan & Trust Co.,* 114 *Ga.* 189, 192 (39 S. E. 846), it is said: "We think the authorities are uniform that where there is gross inadequacy of price, any circumstances such as fraud, mistake, misapprehension, surprise, or anything else which conduces to the inadequacy of price, will be held to invalidate the sale." It is also said that "Courts have full power over their officers making execution sales; and whenever satisfied that a sale made under process is infected with fraud, irregularity, or error to the injury of either party, the sale will be set aside."

In *Bean* v. *Kirkpatrick,* 105 *Ga.* 476 (30 S. E. 426), it was held: "It is the right and duty of an administrator who is conducting

a public sale of property belonging to the estate of his intestate, to withdraw the same from sale when it is manifest that the property is about to be sacrificed at a grossly inadequate price." It appears from the record that the same purchaser who bought at 4 o'clock p. m. bid twice as much for the same property in the morning as he bid in the afternoon; and that being so, we think it is manifest that the administrator knew or must have known that the property was being sacrificed at the last sale at a grossly inadequate price, and under these circumstances it was his duty to have withdrawn that property from sale and to have readvertised it, provided the persons making the highest bid in the morning did not comply with that bid. It is true that if a purchaser fails or refuses to comply with his bid, an officer or administrator may, under proper conditions, resell on the same day within the legal hours of sale (*Suttles* v. *Sewell,* supra) ; and what is meant by " under proper conditions " has been construed to mean " before the crowd disperses and the hours of sale terminate." Ibid. 709. From a reading of the entire record in this case it can not be said that this second sale was held under proper conditions. In order for the conditions to be proper, the second sale should not only take place within the legal hours, but the sale should not occur under circumstances such as were testified to in the present case, when the crowd had dispersed and when prospective bidders were kept from bidding on the property if they desired to do so. We are of the opinion that this case would stand differently if the purchaser at the morning sale had repudiated her bid before the crowd dispersed, *and* the second sale had been called after timely notice within the legal hours. *Roberts* v. *Smith,* 137 *Ga.* 30 (2) (72 S. E. 410). But of course, if the sale is held on the same day, it should be before the crowd disperses and within the legal hours. In *Black* v. *Elrod,* supra, it was held that " Where an administrator sells property of the estate at an inadequate price, and where the facts show other and corroborating evidence of fraud, the sale should be set aside." The evidence for the plaintiff, including a number of witnesses, is to the effect that the property was sold in the afternoon at an inadequate price; and while fraud is subtle in its nature and difficult to prove, yet slight circumstances are sufficient to prove its existence; and we think that the facts of the present case, including inadequacy of price, are sufficient to authorize the setting aside of the second sale.

From what has been said above we conclude that a new trial should be granted because the verdict finding in favor of the defendants as to the last sale was contrary to law.

2. The court charged the jury as follows: " The plaintiff in this case contends that the consideration received from the sale of these lands, that is, the sum or amount paid by Joseph E. Sikes for these lands, was grossly inadequate, that it did not represent the value of the lands at that time, and that the amount was grossly insufficient to really pay for the land at its actual cash value at the time the lands were sold." The court then followed the portion of the charge above quoted with the following instruction to the jury: " Concerning this subject (the subject of gross inadequacy of price)  I charge you: great inadequacy of consideration, joined with great disparity of mental ability in contracting a bargain, may justify a court of equity in setting aside a sale or other contract. Mere inadequacy of consideration alone will not void a contract. If the inadequacy be great, it is a strong circumstance to evidence fraud." The last portion of the charge quoted above is excepted to on the ground that it was inapplicable to the evidence in the case, there being *no evidence* to authorize the charge, and that it was applied by the jury to the injury of the movant. The portion of the charge excepted to is taken literally from § 4630 of the Civil Code of 1910. The general rule is that instructions to a jury must be based upon evidence; and an instruction that is not warranted by the evidence, and which is calculated to confuse and mislead the jury, is error. *Central Ga. Power Co.* v. *Cornwell,* 139 *Ga.* 1 (2) (76 S. E. 387, Ann. Cas. 1914A, 880). In the case of *Gorman* v. *Campbell,* 14 *Ga.* 137, 142, it was held: " A charge is objectionable which states general principles correctly but which are nevertheless not applicable to the facts as proven. The instructions should always be given in reference to the evidence in the particular case." In delivering the opinion of the court in the *Gorman* case Judge Lumpkin said: " Nothing is more dangerous than to lay down general propositions, which, instead of aiding, scarcely ever fail to mislead juries. Courts should apply the principles of law to the facts in evidence in each particular case; stating those facts hypothetically." And see, to the same effect, *Butt* v. *Maddox,* 7 *Ga.* 495 (3) ; *Towns* v. *Kellett,* 11 *Ga.* 286 (2), 293. As the judgment is

reversed upon another ground, we call attention to the inaptness of the portion of the charge excepted to, in order that it may not be repeated on the next trial, unless there is evidence to authorize it.

3. The other grounds of the motion for new trial do not show cause for reversal.

> *Judgment reversed. All the Justices concur.*