**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2025**

# In the Court of Appeals of Georgia

A25A0113. FOWLER v. WBL SPO I, LLC, et al.

DOYLE, Presiding Judge.

Lane Fowler appeals from an order dismissing a wrongful foreclosure action he filed against WBL SPO I, LLC, ("WBL") and World Business Lenders, LLC ("World Business"). Fowler contends that the trial court erred by concluding as a matter of law that his complaint failed to allege a claim for wrongful foreclosure because he had defaulted on the underlying loan. For the reasons that follow, we affirm in part and reverse in part.

According to Fowler's complaint, which we view in the light most favorable to him as the non-movant on a motion to dismiss,[1] Fowler bought a home in Dunwoody,

---

[1] See *Campbell v. Cirrus Ed., Inc.*, 355 Ga. App. 637, 638 (845 SE2d 384) (2020) ("[O]n appeal, this Court conducts a de novo review of a trial court's ruling on a

Georgia, in 1992. In 2019, Fowler sought a short-term loan from World Business in support of his business, Brainstorm d/b/a Orchard Learning Systems. World Business presented Fowler with a note memorializing a loan for $159,000 with an interest rate expressed daily that amounted to 69.22 percent per year or 5.768 percent per month; the lender was listed as Axos Bank, a federal savings bank headquartered in California. Fowler personally guaranteed the loan, and to secure the loan, Fowler executed a security deed to his house in favor of Axos, securing the principal plus a total of $219,513.84 in interest.

Fowler made his monthly payments on the loan from January 2020 to July 2020, when his business faltered due to the COVID-19 pandemic, resulting in his default on the loan. In October 2020, World Business prepared instruments assigning the security deed from Axos to World Business, and then from World Business to WBL.

In May 2021, WBL initiated foreclosure proceedings. A few days before the foreclosure auction, Fowler brought this action on July 2, 2021, against WBL and

motion to dismiss. In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts. . . . ") (punctuation omitted).

World Business, seeking remedies for wrongful foreclosure and civil usury as well as a declaratory judgment in his favor. He also filed a notice of lis pendens.

As alleged in Fowler's (later amended) complaint,[2] the foreclosure proceeded, and WBL's auction agent conducted a public, non-judicial sale on the DeKalb County courthouse steps on July 6, 2021. At approximately 1:00 p.m., the agent announced the auction and solicited bids on Fowler's home. The agent accepted the highest bid and knocked down the property to that bidder. Those who had gathered to witness the sale or bid on the property then dispersed.

The auctioneer provided a memorandum of sale to the high bidder and accepted the bidder's payment of the knockdown price. Shortly thereafter, the bidder returned and demanded a refund of the payment and cancellation of the transaction; the agent complied. At approximately 1:30 p.m., Fowler approached the agent and shared his view that she was not lawfully authorized to re-cry the auction. At 2:03 p.m., approximately an hour after the initial auction, the agent announced that she would be re-crying the auction from a "previous bidder who backed out." Five minutes later, on behalf of WBL, the agent accepted the highest bid of $221,000 from Diamond

---

[2] Fowler's initial complaint was amended to include the allegations regarding the foreclosure auction at issue in this appeal.

Alliance LLC. The agent provided Diamond Alliance with a memorandum of sale and accepted funds for the bid price.

While Fowler's suit proceeded, Diamond successfully intervened as a defendant and cross-claimant. The defendants moved to dismiss the amended complaint. The parties briefed the matter, and following a hearing, the trial court granted the motions to dismiss the complaint and the lis pendens. The trial court's order reasoned that there was no dispute that Fowler was in default, so WBL was within its rights to foreclose based on the default. Fowler now appeals.

1. Fowler contends that the trial court erred by ruling as a matter of law that he could not maintain his claims based on his default. Fowler focuses on the alleged flaw in the auction process when it was re-cried after the crowd had dispersed, thereby chilling the purchase price. Based on the record before us, we agree in part.

Fowler's complaint, in part, seeks to rescind the foreclosure due to the usurious nature of the loan and improper auction procedure.[3] Rescission is an equitable remedy.[4] Thus, as

> [i]n a typical wrongful foreclosure action, the plaintiff is required to tender the amount due under the security deed and note in order to maintain an action in equity. There are exceptions, such as when the sale of notes was procured via improper actions of the mortgagee which may have prevented the mortgagor from tendering its debt. However, grounds such as poverty, non-compliance with foreclosure procedures, or other acts not involving tortious interference with the funds that would potentially comprise the tender itself will not serve as an excuse for failure to tender the amount due under the security deed.[5]

Here, it is undisputed that Fowler failed to tender the amount due under the loan, nor does Fowler's complaint assert this fact. Although Fowler alleges

---

[3] See generally *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285, 285-286 (1) (443 SE2d 837) (1994) (holding that a plaintiff in a wrongful foreclosure action must elect between the remedies of cancelling the foreclosure and recovering the value of the property).

[4] See *Underwood v. Colony Bank*, 362 Ga. App. 548, 557 (3) (869 SE2d 535) (2022) ("A request to set aside a deed sounds in equity.").

[5] (Citations and punctuation omitted.) *JPMorgan Chase Bank, N.A. v. Durie*, 350 Ga. App. 769, 773 (4) (830 SE2d 387) (2019).

improprieties in the auction itself, he does not allege any conduct on the part of the defendants that would have hindered his ability to tender the amount due.[6] Thus, with respect to the equitable remedy of setting aside the foreclosure sale, "[t]he trial court properly directed a verdict against [Fowler] on [that] claim[]. [He has] made no tender of the indebtedness secured by the deed to secure debt and thus [is] not entitled to set aside the sale under power."[7]

---

[6] Compare *Brown v. Freedman*, 222 Ga. App. 213, 216 (1) (474 SE2d 73) (1996) (holding that the debtor's attempt to tender was relieved because "there is evidence that she attempted through intermediaries to determine how much was owed so she could pay it, but neither Freedman nor his attorney would tell her").

[7] *Smith v. C & S Financial Corp.*, 245 Ga. 850, 852 (1) (268 SE2d 157) (1980). See also *Underwood*, 362 Ga. App. at 557 (3) ("[W]hen a debtor seeks to set aside a foreclosure sale, he must first pay what he owes to the creditor absent extraordinary circumstances."); *Massey v. Nat. Homeowners Sales Svc. Corp.*, 225 Ga. 93, 99 (7) (165 SE2d 854) (1969) ("In order to set aside the sale on any ground asserted by its pleadings other than the lack of authority to make the deed, or the foreclosure of the deed prior to its due date, it was incumbent on the appellee to make a proper tender of the amount of the debt due."); *Hill v. Filsoof*, 274 Ga. App. 474, 476 (1) (618 SE2d 12) (2005) (affirming dismissal of wrongful foreclosure counterclaim because the claimant "admittedly owed the principal amount of the note . . . [and] did not [unconditionally] make the payment or tender under the note required for him to seek the equitable remedy of setting aside the foreclosure").

Nevertheless, Fowler cites *Smith v. C & S Financial Corp.*[8] for the proposition that a "bid chilling" claim can survive, even if no tender was made. In that case, the Smiths were landowners who executed a security deed. After the loan went into default, the Smiths sued to enjoin the foreclosure sale and later amended their complaint to have the sale set aside. Ultimately, the trial court directed a verdict against the Smiths on their claim for equitable relief setting aside the sale under power, but it sent the bid chilling claim for damages to the jury (which found in favor of the defendants).[9] The Supreme Court of Georgia affirmed those rulings, explicitly holding that the Smiths' equitable claim to set aside failed due to their lack of tender, but also holding that, based on the evidence, "[t]he trial court properly submitted the issue of 'chilling the bidding' to the jury."[10]

---

[8] 245 Ga. at 853 (3) (a).

[9] See id. at 852-853 (1), (3) (b).

[10] Id. at 852 (3) (b).

Here, for the same reason, Fowler cannot undo the sale. But the facts alleged in the amended complaint, construed in his favor, sufficiently allege a claim for damages due to bid chilling.[11]

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In reviewing such a motion, any doubts regarding the complaint must be construed in favor of the plaintiff.[12]

Fowler's complaint alleged that the auction process itself, even aside from his other challenges, was improper due to the re-crying after the dispersal of the crowd assembled for the sale, resulting in a grossly inadequate sale price. At this stage of the proceeding, it was premature to conclude that Fowler cannot prove this claim under

---

[11] See *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 176-178 (1) (a) (ii) (733 SE2d 457) (2012) (holding that it was premature to dismiss a claim for bid chilling based on the facts alleged within the framework of the complaint).

[12] (Citations and punctuation omitted.) *Norman v. Xytex Corp.*, 310 Ga. 127, 130-131 (2) (848 SE2d 835) (2020).

any set of facts within the framework of the amended complaint.[13] Accordingly, we affirm the dismissal with respect to Fowler's claim seeking to rescind the sale, but we reverse the dismissal with respect to Fowler's potential claim for damages for bid chilling.

2. With respect to Fowler's challenge to the dismissal of his lis pendens, this enumeration fails in light of our ruling on the merits of his equitable claim to the property in Division 1.[14]

*Judgment affirmed in part and reversed in part. Markle and Padgett, JJ., concur.*

---

[13] See id. See also *Suttles v. Sewell*, 109 Ga. 707, 709 (35 SE 224) (1900) ("If the bidder, on the day of sale, refuses to comply *before the crowd disperses* and the hours of sale terminate, *that day* is the proper time to resell; if that can not be done, just so soon as the property can be readvertised after notice of refusal to comply with the terms of sale.") (punctuation omitted; emphasis supplied), quoting *Saunders v. Bell*, 56 Ga. 442, 443 (1876).

[14] See generally *Spinola v. Akaranta*, 375 Ga. App. 194, 199 (1) (915 SE2d 24) (2025) ("With regard to whether a property is [properly part of a lis pendens claim], a lis pendens may not be based upon a suit for money damages only. The pending suit must seek relief in law or equity involving the real property in the lis pendens *to protect the alleged interest in the land*.") (emphasis supplied; punctuation omitted).